# TYRONE WAYNE PINKETT *v.* STATE OF MARYLAND

[No. 631, September Term, 1975.]

*Decided March 2, 1976.*

The cause was argued before ORTH, C. J., and POWERS, LOWE and MELVIN, JJ.

*John W. Sause, Jr., District Public Defender*, with whom was *Alan H. Murrell, Public Defender*, on the brief, for appellant.

*Michael James Kelly, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Sidney S. Campen, Jr., State's Attorney for Talbot County* and *Philip C. Foster, Assistant State's Attorney for Talbot County* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

Tyrone Wayne Pinkett was charged with the commission of three offenses under separate charging documents — two statements of charges, and an arrest warrant — filed in the District Court in Talbot County. Detective Corporal Walter E. Chase of the Easton Police Department prepared and executed the statements of charges on 15 November 1974. The applicant was Lt. Edward Blessing of that Department. Statement of Charges No. 063764 alleged that on 14 November 1974 at 2255 hours at Harrison Street, Easton,

Maryland, Pinkett unlawfully possessed a concealed weapon, to wit, a sawed-off shotgun in violation of Code, art. 27, § 36 (a).[1] The "factual information or observations (probable cause)" set out by Blessing as the basis for the charge were: "On 11-14-74 at 2255 hrs. the applicant stopped a 1968 Ford, Md. Tag # 6841 for a Motor Vehicle Violation in Easton, Md. While making the stop the defendant appeared to be putting something under the seat or on the floor. A consent search was granted by the operator of the car for the applicant to search under the front seat. In doing so I found a sawed off Shot Gun and shells to fit the gun. The defendant was sitting in the rear left side of the car."

Statement of Charges No. 063765 alleged that on the same date, time and place, Pinkett "did unlawfully possess a sawed off Shot Gun, and other items mentioned above, the charge is being a Rogue and Vagabond Art. 27 Sec. 490." The "other items mentioned above" were set out in the "factual information and observations" of Blessing, stated as the probable cause for the charge. Blessing recounted the stopping of the car and the actions of Pinkett. He added: "After finding the gun I observed several nylon stockings, several pairs of gloves and clothes line rope. In the past several weeks there has been armed robberies in this area where the Police Investigations have revealed items such as has been mentioned were used while committing the crimes."

On each Statement of Charges, Pinkett stated, under date of 15 November 1974, that he had read, or that there had been read to him, the contents of the document and

1. As originally prepared, the Statement of Charges read that Pinkett "did unlawfully possess a concealed weapon, to wit a sawed off Shot Gun." On the original document in the record before us the "a" before "concealed weapon" was stricken and an "s" added to "weapons". A comma was inserted after "Gun" and the words "and a" added and crossed out. Also added, in handwriting, was the phrase "Art. 27 Sec. 36 (a)." The prosecutor later told the Circuit Court: "The only amendment was an insertion of a section number, according to the records from the District Court, and it looks as if this was inserted by Judge North's hand. It is not my hand." John C. North, II is an associate judge of the District Court, District 3. It appears that he presided at a bail review on 18 November 1974 and that Charles E. Edmondson, then an associate judge of the District Court, District 2, presided at the trial in the District Court.

acknowledged that he had received a copy of it. Return was made to the judicial office on 16 November.

The Arrest Warrant was issued by a judicial officer on 17 November 1974 on the sworn application of Chase. It alleged that Pinkett "did on or about November 14, 1974 at Talbot County aforesaid: Unlawfully wear, carry or knowingly have in his possession a Hand-Gun; and him, the said Tyrone Wayne Pinkett, allegedly having been convicted of a crime of violence, in violation of Art. 27, Sec. 445 (c)." The formal charge was designated as a violation of that statute. Chase certified that he executed the warrant at 7:40 P.M. on 17 November 1974 at "Sheriff's Dept." The judicial officer certified that it was returned on 18 November.[2]

Pinkett was tried in the District Court on 7 February 1975 and convicted on all three charges.[3] He was sentenced to 3 years on the concealed weapon conviction and to a concurrent 3 years sentence on the rogue and vagabond conviction. A sentence of 3 years was imposed on the conviction of possessing a handgun after having been convicted of a crime of violence, to run consecutively to the other sentences. Pinkett appealed.

The appeal was set for trial in the Circuit Court for Talbot County on 2 May 1975. What happened thereafter is a procedural nightmare with serious substantive consequences. When Pinkett appeared in court on 2 May 1975, the State filed a criminal information charging him with four offenses. This charging document informed the court that on 14 November 1974, Pinkett:

I — "unlawfully did wear, carry or knowingly

<hr>

2. Chase applied for a warrant for the arrest of three persons, one of whom was Pinkett. The facts stated to show that there was probable cause to believe that a crime was committed were: "On Nov. 14, 1974 the defendants were picked up in the City of Easton, Md. with a chrome — 22 cal. 9 shot revolver — Serial N 29234 in their possession. The barrel of the revolver had a portion of it sawed off and the brand name burned off. The applicant has proof that the defendants are convicted felons." Code, art. 27, § 445 (c) was alleged to have been violated.

3. The two Statements of Charges were docketed as Criminal 979. The Arrest Warrant was docketed as Criminal 983.

transport a handgun, to wit: a short barreled shotgun, in a vehicle while travelling upon the public roads and highways in this State", in violation of art. 27, § 36B (b);

II — was a rogue and vagabond in violation of art. 27, § 490;

III — "unlawfully did wear, carry or knowingly have in his possession a pistol, to wit: a .22 caliber revolver, the said Tyron Pinkett having been convicted of a crime of violence", in violation of art. 27, § 445 (c);

IV — "unlawfully did carry or knowingly transport said handgun in a vehicle travelling upon the public roads and highways in this State" in violation of art. 27, § 36B (b).

The State informed the court that it wished to arraign Pinkett on the information and "to nolle pros the charging document which has been transferred to the Circuit Court from the District Court, an arrest warrant, on which a conviction has previously been obtained. We will nolle pros the arrest warrant first." Upon inquiry by the court, the State explained that it wished to take this action because the charging document "lists the improper section number for the conviction. The sentence on the conviction will indicate it was to be served concurrently with another conviction, so the actual length of sentence in the District Court is not altered by this." The State moved "to nolle pros statement of Charges No. 063764 from the District Court" and the motion was granted.[4] The record does not disclose that Pinkett consented to the nolle prosequi. Defense counsel said that before a plea was tendered he desired to make a statement to clarify the record. He said:

"As read by the Clerk, counts 1 and 4, and any counts for which the defendant has never been tried

---

4. Charging document No. 063764 was a statement of charges and not an arrest warrant. As we have set out, it charges the unlawful possession of a concealed weapon, a sawed-off shotgun, in violation of art. 27, § 36 (a).

and, therefore, I am assuming and want for clarification on the record that the Circuit Court for Talbot County is thus assuming original jurisdiction as to counts 1 and 4 and counts 2 and 3 are here de novo from the District Court, and will be tried de novo."

The prosecutor said, "The State agrees with that" and added, "I believe Mr. Moore (Philip W. Moore, 3rd, Esq., defense counsel) feels he has a direct appeal right as to any new charges but would not have an appeal right as to the de novo charges." This statement went unanswered. Pinkett was arraigned on the information, pleaded not guilty and prayed a trial by jury. Trial was set for 13 May.

The case came on for trial as set. Before trial commenced, at a bench conference out of the presence of the jury, the court suggested that the 4th count be amended by adding "to wit: a .22 caliber revolver" after the word "handgun", to distinguish it from a short barreled shotgun. This was subsequently done in open court without objection. At the bench conference defense counsel told the court: "It is my intention to file a motion to dismiss the two transportation charges as soon as the jury is empanelled because we can't do it until then on the grounds of double jeopardy." The prosecutor said: "The plea of double jeopardy doesn't arise until some testimony is taken, does it. The way I understand it, as soon as the jury is empanelled." The court suggested that after the jury was empanelled, the motion could be heard out of their presence. In open court, Pinkett waived re-arraignment on all counts as amended. The jury was duly selected, placed in the jury box and sworn. All witnesses were sequestered.

Out of the jury's presence, Pinkett moved the court "to dismiss the criminal information charging [him] with violations of Article 27, § 36B (b)." [5] These violations were

---

5. The written motion filed contained this rather confused explanation: "On April 30, 1975 the defendant was informed that the State proposed to add two additional charges to those charges tried in the District Court, one from which the Defendant was appealing. On May 2, 1975 the

charged in counts I and IV of the information. Pinkett claimed he was placed twice in jeopardy as to them when the jury was empanelled because he had already been charged and convicted on them in the District Court. He claimed that he had "been tried once under all of the facts and with the exact same proof that the State intends to try [him] a second time for charges involving Art. 27, § 36B (b). As a result, [he] is now being placed in double jeopardy for the handgun charges, and the two new informations charging violation of Art. 27, § 36B (b) should be dismissed." Pinkett pointed out in his motion:

> "[I]f the State is permitted to try the Defendant on the new charges, then the intent of the District Court Article allowing District Court criminal trial with a de novo appeal to the Circuit Court is being defeated, because the State cannot by its actions allow appeals as a matter of right by adding new charges, or conversely, inhibit and otherwise unfairly influenced the District Court Appellate processes by threatening to add new charges after a complete and total trial on the old charges."

After argument of counsel, the court denied the motion.[6]

---

Defendant was arraigned on the charge of possession having been convicted of a crime of violence, both of which are appeals. The State nolle prossed the earlier conviction of 36A and added two additional charges charging the Defendant with transporting and carrying a handgun (Art. 27, § 36B (b)). The State charged two separate offenses, two for carrying a pistol and the other for carrying a sawed-off shot gun."

6. The court gave these reasons:

> "We believe that although some of the evidence might be admissible in the trial of this case, while the evidence that will be used to prove the matter set forth in this case from what might have been admissible under the first charge or information, we don't believe a conviction, even though it was, we don't believe it should have been properly sustained by the evidence because here you have a charge in the Court below which resulted in a conviction for violating section 36 a of Article 27, and that conviction was patently wrong because the evidence offered to support it was evidence of hand guns, and hand guns are specifically excepted from 36 a and, furthermore, that had nothing to do with the transportation of dangerous weapons in a vehicle on

The trial proceeded. Motions for judgment of acquittal were made and denied at the close of evidence offered by the State and at the close of all the evidence. The jury, being duly charged, convicted Pinkett under all four counts of the information. He was sentenced to one year on count I, to a three year sentence on count II, to run consecutively to the sentence imposed on count I, and to a three year sentence on count III, to run consecutively to the sentences imposed on counts I and II. No sentence was imposed on count IV, the court stating that "sentence be suspended" thereon. Pinkett was to serve a total time of seven years, commencing with 14 November 1974 — "You have been given full credit for the time you have been lodged in jail pending the disposition of this case." Pinkett noted a direct appeal to this Court.

*Summary*

*Charging Documents Tried in District Court*

Statement of Charges No. 063764:

> possession of a concealed weapon, a sawed off shotgun; art. 27, § 36 (a).[7] Nolle prosequi entered on appeal in Circuit Court.

Statement of Charges No. 063765:

> rogue and vagabond; art. 27, § 490.[8]

---

a highway, which is part of the evidence that would have to be offered to sustain a conviction in the present case, so we don't believe there is an identity of offense for double jeopardy purposes. . . ."

**7.** Code, art. 27, § 36 (a) proscribes the wearing or carrying, concealed, or openly with intent to injure, certain named weapons, including "any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) . . . ." Handguns were excepted by ch. 13, Acts 1972. See Howell v. State, 29 Md. App. 646 (1976), n. 8 at 655-656.

**8.** Under Code, art. 27, § 490 a person shall be deemed a rogue and vagabond if he is apprehended having upon him any pistol or other offensive weapon at places and under circumstances from which may be presumed an intent feloniously to assault any person. Tillery v. State, 12 Md. App. 624, 627-628 (1971); Jett v. State, 12 Md. App. 568, 574-575 (1971).

Arrest Warrant:

> possession of a handgun, having been convicted of a crime of violence; art. 27, § 445 (c).[9]

*Criminal Information tried in the Circuit Court*

Count I:

> transporting a short barreled shotgun in a vehicle on public roads; art. 27, § 36B (b).[10] Motion to dismiss denied.

Count II:

> rogue and vagabond; art. 27, § 490.

Count III:

> possession of a .22 caliber revolver having been convicted of a crime of violence; art. 27, § 445 (c).

Count IV:

> transporting a .22 caliber revolver in a vehicle on public roads of Maryland; art. 27, § 36B (b). Motion to dismiss denied.

---

9. Code, art. 27, § 445 (c) provides: "It shall be unlawful for any person who has been convicted of a crime of violence, or of any of the provisions of this subtitle ["Pistols", §§ 441-448] or who is a fugitive from justice or a habitual drunkard, or addicted to or an habitual user of narcotics, barbiturates or amphetamines, to possess a pistol or revolver."

10. "Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor; and it shall be a rebuttable presumption that the person is knowingly transporting the handgun; . . . ." Code, art. 27, § 36B (b).

The term "handgun" includes a short-barreled shotgun. Art. 27, § 36F (a). "Short-barreled shotgun" means a shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if said weapon as modified has an overall length of less than 26 inches. § 36F (a) (3). For definition of "Shotgun" see § 36F (a) (5).

The one thing standing certain from the confused complexity of the proceedings below is that Pinkett's appeal from the judgments entered against him in the District Court has never been properly determined by the Circuit Court. The convictions of the crimes charged by the two statements of charges and the arrest warrant and the sentences imposed on those convictions constituted final judgments. As final judgments, there was the right of appeal from them to the Circuit Court, Courts Art. § 12-401 (a), and the appeals were to be tried de novo therein, § 12-401 (c). It may be that, because the State was obliged to prosecute Pinkett afresh on the crimes charged in the District Court, it could enter a nolle prosequi in open court as to all or any one of them, Maryland Rule 711, although we do not believe this is the usual practice on appeal from the District Court and do not recommend it.[11] If it is done without the consent of the accused, however, even though before the de novo trial has commenced, we think it must have the same effect as a nolle prosequi entered without the consent of the accused after trial has commenced. That is, it operates as an acquittal, for the accused has already been once tried and convicted. In other words, by entering a nolle prosequi in such circumstances, the State abandons the prosecution of that charge and confesses that the accused is not guilty of it. See *Greathouse v. State*, 5 Md. App. 675, 685-686 (1969), *cert den.* (1969). The effect of the State's action here is that upon the proceedings in the Circuit Court, Pinkett was not guilty of the crime of which he was convicted in the District Court as charged by Statement of Charges No. 063764, namely, that he "did unlawfully possess concealed weapons, to wit, a sawed off Shot Gun, Art. 27, § 36 (a)."[12] Our view is indicated in

11. " 'Indictment' shall include a grand jury indictment, a criminal information and a charging document as defined in Maryland District Rule 702 (Definitions)." Md. Rule 702 a. "Charging document" includes an arrest warrant and a statement of charges. Maryland District Rule 702 a.

12. There seemed to be some confusion at the Circuit Court trial whether Statement of Charges No. 063764 purported to charge an offense under art. 27, § 36 (a) or § 36A. If the sawed-off shotgun was a handgun, it was, as we have indicated, expressly excluded from the provisions of § 36

*Friend v. State,* 175 Md. 352 (1938) where the Court said, at 355-356: "The *nolle prosequi,* if it could be legally entered, would effect a final disposition of the entire prosecution originating before the justice of the peace, and would place the defendant on his deliverance, in so far as that proceeding was concerned."

Our disposition of the judgment under Statement of Charges No. 063764 leaves unresolved the appeal from the judgments under Statement of Charges No. 063765 and the Arrest Warrant. At the proceedings on 2 May 1975, as we have indicated, defense counsel suggested that as Pinkett had "never been tried" on Counts I and IV of the information but had been tried in the District Court for the offenses charged in Counts II and III, that the Circuit Court for Talbot County was assuming original jurisdiction as to Counts I and IV, and that Counts II and III "are here de novo from the District Court, and will be tried de novo." The State agreed that this was so, and further compounded the confusion by expressing a belief that defense counsel felt that he had a direct appeal to the Court of Special Appeals "as to any new charges but would not have an appeal right as to the de novo charges." [13] The trouble with this is that it is clear that the appeal to be tried de novo as provided by Courts Art. § 12-401 (c) must be tried on the charging document on which the trial was had in the District Court. Md. Rule 1314 a, concerning appeals from the District Court, declares: "Where an appeal is to be heard de novo, it shall be tried according to the rules of procedure governing cases instituted in the appellate court, except the rules relating to form and sufficiency of the pleadings . . . ." Md. Rule 725 a,

---

(a). Section 36A, however, was patently not applicable. It concerns the carrying of a deadly weapon on any school property, and there was nothing to show that Pinkett carried the shotgun on school property. The trial judge concluded that the offense was charged under § 36 (a). See note 6, *supra.*

13. The right of appeal from a final judgment to the Court of Special Appeals bestowed by Courts Art. § 12-301, does not permit an appeal from a final judgment of a court entered or made in exercise of appellate jurisdiction in reviewing the decision of the District Court. Courts Art. § 12-302 (a). Prior to 1 July 1975, the Court of Special Appeals was authorized to require by writ of certiorari that a decision be certified to it for review in such a case. On and after that date, such writs of certiorari are the province of the Court of Appeals. Courts Art. § 12-305. See Acts 1975, ch. 447.

applicable to the circuit courts, states: "Pleadings in a criminal proceeding shall be . . . the charging document where . . . an appeal has been taken from a judgment in the District Court; . . . ." The rationale of the requirement that the appeal be tried on the charging document under which prosecution was had in the District Court is manifest. "De novo" is defined by Black's Law Dictionary (1951) to mean "Anew; afresh; a second time." The American Heritage Dictionary (1969) gives "again" as the meaning of both "anew" and "afresh." If the trial in the circuit court is not upon the same charging document as was the trial in the District Court, the trial in the circuit court would be an original trial, not a trial anew, afresh, or again, so as to be a trial de novo. That trial in the circuit court on appeal from the District Court must be on the same charging document is patent when the crimes charged are within the exclusive original jurisdiction of the District Court. See *Kirsner v. State*, 24 Md. App. 579, 582 (1975). We see no justification whatsoever for a different rule as to crimes over which the District Court and the circuit court have concurrent jurisdiction and as to which jurisdiction is originally assumed by the District Court.[14]

The short of it is that we find plain intent from the statute and rules that a trial de novo in a criminal case on appeal to the circuit court from a final judgment of the District Court shall proceed only on the same charging document which was the basis of the original trial. A trial of the appeal under any other charging document is void. The de novo trial washes out the trial in the District Court but not the basis for it. Thus, the requirement that the appeal be tried under the same charging document may not be obviated by agreement, nor may it be waived, either expressly or by

---

14. The jurisdiction of the District Court is concurrent with that of the circuit court with respect to a common law or statutory misdemeanor in which the penalty may be confinement for three years or more or a fine of $2,500 or more. Violations of art. 27, § 36 (a), § 445 (c), and § 490 are each a statutory misdemeanor and, as to each, imprisonment of three years is authorized. The penalties for the crimes created by §§ 36 (a) and 490 are set out in those sections. The penalty for the offense created by § 445 (c) is provided by § 448. See Courts Art. § 4-302 (c).

470

failure to object. We shall vacate the judgments entered in the Circuit Court for Talbot County under Counts II and III of the criminal information and remand the case with direction to try the appeal from the judgments of the District Court on Statement of Charges No. 063765 and the Arrest Warrant. Any attempt, thereafter, to prosecute Pinkett under Counts II and III of the information may be avoided by invoking the constitutional prohibition against being placed twice in jeopardy for the same offense.

Our finding that the action of the State with respect to Statement of Charges No. 063764 placed Pinkett on his deliverance insofar as that charge was concerned, our vacating the judgments of the Circuit Court entered under Counts II and III of the information, and our remand with direction to try the appeal noted from the District Court on Statement of Charges No. 063765 and the Arrest Warrant, disposes of Pinkett's appeal to the Circuit Court. Left unresolved is the status of the judgments entered in the Circuit Court under Counts I and IV of the information.

Pinkett asks: "Was it proper to try [him] in the Circuit Court on the basis of an information filed after the appeal was instituted and on charges other than those of which he had been convicted in the District Court?" We have found that it was not proper to try him in the Circuit Court on the basis of the information on charges of which he had been convicted below. We now conclude that it was proper to try him in the Circuit Court on the basis of the information on charges other than those of which he had been convicted below. Pinkett argues: "A de novo trial in the Circuit Court on appeal from the District Court may be had only on the same charge of which [he] was convicted in the District Court, and on no other charge." With this we are in accord, as it is the teachings of *Kirsner v. State, supra.* But with regard to Count I and Count IV of the information, the trial in the Circuit Court was not a de novo trial. The offenses presented in those counts had not been tried in the District Court. They were new charges, as defense counsel expressly made clear for the record at the proceedings in the Circuit Court on 2 May 1975. Pinkett claims that he could not be

tried in the Circuit Court on those charges because to do so would put him twice in jeopardy. But he could not be twice put in jeopardy unless he had been once in jeopardy, and he had not been put in jeopardy in the District Court on the offenses presented in Counts I and IV because he had not been charged there with those offenses. Pinkett believes that *Cohen v. State*, 173 Md. 235 (1937) supports his contention. *Cohen*, however, asserted, at 238, that "one cannot be twice put in jeopardy for *the same offense . . . .*" (emphasis added) The prohibition against putting an accused twice in jeopardy applicable to criminal prosecutions in Maryland courts is now a constitutional matter, flowing from the fifth amendment to the Constitution of the United States through the fourteenth amendment. *Benton v. Maryland*, 395 U. S. 784 (1969). As we pointed out in *Thomas v. State*, 26 Md. App. 232, 238 (1975), Maryland is not at liberty to interpret the fifth amendment more restrictively than does the Supreme Court of the United States. The Supreme Court in *Blockburger v. United States*, 284 U. S. 299 (1932), revitalized in *Gore v. United States*, 357 U. S. 386 (1958), asserted that the defense of double jeopardy may be successfully interposed only if the offenses charged require proof of the same facts. If the offense to which the constitutional challenge is made necessitates the proving of a fact or facts not necessary to establish conviction of the prior charge, a plea of double jeopardy does not prevail. The misdemeanors charged under Counts I and IV of the information were created by Code, art. 27, § 36B (b). See note 10, *supra.* Counts I and IV charged Pinkett under that part of the statute which prohibited the wearing, carrying or knowingly transporting of a specified handgun in a vehicle while travelling upon the public roads and highways of this State.[15] To prove these charges it was necessary that the State establish that the handgun was worn, carried or knowingly transported by Pinkett *in a vehicle travelling*

---

**15.** No question was raised about the propriety of couching the charges in the information in disjunctive rather than conjunctive terms. See State v. Beers, 21 Md. App. 39 (1974); Ayre v. State, 21 Md. App. 61 (1974); Thompson v. State, 26 Md. App. 442 (1975).

*upon the public roads and highways of this State.* This fact concerning a vehicle so travelling was not necessary to prove that Pinkett was in possession of a concealed weapon in violation of art. 27, § 36 (a) as charged in Statement of Charges No. 063764, or to prove that Pinkett was a rogue and vagabond in violation of art. 27, § 490 as charged in Statement of Charges No. 063765, or to prove that Pinkett was in possession of a handgun having been convicted of a crime of violence in violation of art. 27, § 445 (c) as charged in the Arrest Warrant. The offenses tried in the District Court were not the same offenses charged under Counts I and IV of the criminal information; they were separate and distinct. Therefore, the double jeopardy prohibition did not apply to bar the prosecution of Pinkett under Counts I and IV of the criminal information. See *Stevens v. State*, 27 Md. App. 460, 462-467 (1975).

Pinkett further challenges his prosecution under Counts I and IV of the information on the grounds of merger, splitting action, and collateral estoppel. Merger of offenses was not involved here. The test under the modern doctrine of merger is whether one crime necessarily involves the other, that is, when the facts necessary to prove the lesser offense are essential ingredients in establishing the greater offense, the lesser offense is merged into the greater offense. *Moore v. State*, 23 Md. App. 540, 548 (1974). The doctrine operates to merge a conviction for a lesser included offense into a conviction for a greater offense. It is not applicable here. Nor is the State collaterally estopped from prosecuting Pinkett under Counts I and IV. The doctrine of collateral estoppel as explicated in *Ashe v. Swenson*, 397 U. S. 436 (1970) does not apply in the circumstances here. *Ashe* held that after a jury determined that the accused was not one of the robbers the State could not relitigate the identical issue at a second trial.[16] It does not stand for the proposition that

---

16. The Court said, 397 U. S. at 446:

"The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing

where an accused is convicted of one crime he may not be prosecuted for another crime arising out of the same factual circumstances.

Pinkett points out that Counts I and IV charged violations of the same statute, art. 27, § 36B (b), on the same date, at the same time — the only difference being that one charge related to a shotgun and the other to a revolver. "We do not believe that this single transaction can be broken down into constituent elements to form separate crimes, any more than larceny can be broken down to support separate convictions for each item taken in a single asportation." When we look at the prohibition spelled out in the statute in the light of the legislative findings and declaration of policy announced in § 36B (a), the penalties authorized by § 36B (b) and (e), and the separate misdemeanor provisions of § 36B (d), we are convinced that the legislative intent was that a person wearing, carrying, or transporting more than one handgun is guilty of more than one crime.[17] *Ellingham v. State*, 163 Md. 278 (1932), cited by Pinkett, was concerned with a continuing offense, and does not persuade us to the contrary.

---

the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again."

**17.** Section 36B (a) reads:

"The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involved in the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens."

Pinkett also argues that he was not waiving any rights insofar as new charges were concerned by noting an appeal to the Circuit Court from the judgments entered in the District Court. The State has not suggested, nor do we, that Pinkett waived any double jeopardy claim by so doing.[18] As we have indicated, we believe that Pinkett was not put twice in jeopardy by prosecution under Counts I and IV. No question of waiver is involved.

We hold that the Circuit Court did not err in denying the motion to dismiss Counts I and IV of the criminal information.

During the course of the trial in the Circuit Court Lt. Blessing testified on behalf of the State that he had stopped a car driven by Nathaniel Ennals in which Pinkett was a passenger. Subsequently he searched the car. "I am looking for weapons, a chrome barrel revolver I knew had been used in the Easton Manor Motel robbery." He found such a revolver in the crack "where the back seat and the rest came together . . . and this was the same type chrome weapon that had been used in the motel robbery." It was a .22 caliber and was loaded with nine "long" cartridges. He also found gloves, rope, and nylon stockings. Such articles, he said, had been used in recent armed robberies in Dorchester, Talbot and Queen Anne's Counties.

Nathaniel Ennals testified on behalf of the State. He said that he, Pinkett and two others, Victor Jones and Donald Sanders, had decided to rob a motel. They had nylon stockings for masks, gloves, and rope. He identified the revolver, which had been admitted in evidence, as the weapon which Pinkett had. "He had it in his hand and showed it and displayed it." They went to two motels. At one

---

18. We do not reach the question whether the defense of double jeopardy is jurisdictional or constitutional in application. In Johnson v. State, 3 Md. App. 105, 108-109 (1968), decided under the common law, we did not decide that point, but assumed for the purpose of decision that the defense of double jeopardy was jurisdictional. Jourdan v. State, 275 Md. 495, 506-507 (1975) indicates that the defense of double jeopardy is to be treated as a constitutional right which may be waived rather than a matter of the jurisdiction of the trial court which may not be even though constitutionally created.

the manager would not open the door and at another there were too many people around. They drove back to Easton and were stopped by the police.

Pinkett testified on his own behalf. He denied he had a pistol, asserted he did not own a pistol, and claimed "I never carried a weapon in my life. . . . Ennals has got a vivid imagination." He said none of what Ennals said was true. He never saw the pistol before he was arrested. On cross-examination he was asked about the weapon:

"Q. What about this pistol, you say you have never seen this pistol before?

A. I saw it in Court.

Q. Isn't it a fact you and Nathaniel Ennals, in the holdup at the Easton Manor Motel, used that pistol?

Mr. Moore: I object.

The Court: Overruled.

Q. Is that a fact, one of you, either one?

A. Would you say that again?

Q. Did you and Nathaniel Ennals, in the company of two people, hold up the Easton Manor Motel?

A. No.

Q. You are under oath.

A. Yes.

Q. Do you know what perjury is?

A. Yes, I do know what it is.

Q. Mr. Pinkett, we will leave that for now. You didn't see any weapons, no one discussed robbery and all this testimony of Ennals is incorrect, is that what you are saying?

A. Yes, it is.

Q. And you didn't discuss any robbery?

A. We didn't discuss any robbery with him or anybody else."

Pinkett urges that the court committed reversible error in overruling his objection. He claims that "[t]he introduction

of information about another crime (a felony at that!) at another time, in another place, was totally irrelevant to the matter at hand. (And, it was a crime for which he had never been charged, much less convicted)."

Defense counsel had opened the door on the Easton Manor Motel robbery on the cross-examination of Ennals. He was permitted to elicit, over objection, that Ennals, Jones and Sanders had appeared in a line-up concerning a robbery at the Easton Manor Motel, that Ennals was "currently charged with the armed robbery of that Motel" and that Ennals did not know who else was charged with that crime. Defense counsel returned to the subject later in his cross-examination:

> "Q. You testified earlier you had been identified in a line-up as having committed a robbery at Easton Manor Motel?
>
> A. Yes, I have been identified.
>
> Q. And that took place in November?
>
> A. I don't know when it took place. I wasn't there.
>
> Q. This robbery was based on somebody walking into the motel?
>
> A. I don't know how it came about."

As part of the case for the defense, Pinkett's counsel called Detective Sergeant Walter E. Chase, Sr. of the Easton Police Department. The transcript reads:

> "Q. In the course of that investigation [of the arrest of the occupants of the Ennals's car] have you made any effort to determine whether or not any of the occupants of that car were participants in various robberies that have taken place in Talbot County?
>
> Mr. Foster [Assistant State's Attorney]: I object and ask to treat this as a continuing objection to any matter not related to this charge.
>
> Mr. Moore [Defense Counsel]: It came up earlier in this matter.
>
> The Court: I overrule the objection.

Q. Do you remember the question?

A. No, sir. Rephrase it.

Q In the course of your investigation did you investigate whether or not or the extent to which the occupants of the car had been involved in various robberies that had taken place along Route 50?

A. Yes, sir.

Q. At any time during that investigation was there a line-up in which you participated?

A. Yes, sir."

Chase said that Pinkett, Ennals, and Jones were in the line-up. Ennals was identified as one of the robbers of the First Western Motel. On cross-examination Chase said that four men had been involved in that robbery and that the chrome plate revolver found in the car had been used in the robbery, although at the time the barrel had not been sawed off.

In the light of what the defense had adduced about other robberies, and considering the rule that evidence of other crimes can be admitted to prove the specific crime charged when it tends to establish "(1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of a crime on trial," *Cothron v. State*, 138 Md. 101, 110 (1921), we conclude that the overruling of the objection was not error.

As we have decided that the judgment entered in the Circuit Court on Pinkett's conviction of being a rogue and vagabond under Count II of the criminal information must be vacated in that he is entitled to a de novo trial in the Circuit Court on appeal from the judgment entered in the District Court on his conviction of being a rogue and vagabond under Statement of Charges No. 063765, we have no need to decide Pinkett's allegation that the evidence

adduced at the Circuit Court trial was not sufficient in law to sustain the conviction.

Pinkett's brief presents three pro se contentions relating to corroboration of the testimony of the accomplice, Ennals, the legality of the search and the chain of custody of the tangible evidence seized. Pinkett's counsel frankly states that he is unable to support them and, as they are presented, we perceive no grounds for reversal on this appeal with respect to them.

> *Judgments under count one and count four of the criminal information affirmed;*
>
> *Judgments under count two and count three of the criminal information vacated;*
>
> *Case remanded for de novo trial in the Circuit Court for Talbot County on appeal from the District Court on Statement of Charges No. 063765 and Arrest Warrant No. 222597.*