Garland P. JEFFERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–9202–CR–50.

Court of Appeals of Indiana,
Fifth District.

Dec. 28, 1992.

James F. Stanton, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Chief Judge.

Jeffers appeals from his conviction of felony murder. We affirm.

Jeffers raises three issues for our review which we separate and restate as:

1. Did the trial court abuse its discretion in admitting the hearsay testimony of a detective with regard to statements made by a witness who later testified?

2. Were the jury verdicts finding Jeffers guilty of both voluntary manslaughter and felony murder inconsistent?

3. Did the trial court properly sentence Jeffers on the greater offense of felony murder as opposed to voluntary manslaughter?

4. Did the trial court improperly fail to vacate Jeffers' voluntary manslaughter conviction?

Robert Montgomery, the victim in this case, went out to get some tacos on the night of June 8, 1990. Montgomery met

Jeffers and Zachary Scott, and he gave them a ride to an intersection at 49th Avenue and Rhode Island in Gary, Indiana. There, they shot Montgomery and took his wallet.

The state charged Jeffers by information with murder pursuant to I.C. § 35–42–1–1 (Count I) and felony murder during the commission or attempted commission of robbery, also pursuant to I.C. § 35–42–1–1 (Count II). At trial, the state called Detective Outlaw, who had taken the statement of Jeffers' girlfriend Lillian Taylor. Over Jeffers' hearsay objection, Outlaw was allowed to testify that Taylor told him that Jeffers had told her that he and Scott shot Montgomery [1]. On the witness stand, Taylor later acknowledged making the statement and testified to essentially the same facts.

The jury returned guilty verdicts on the felony murder charge and on voluntary manslaughter, a lesser included offense under Count I. The court entered judgment on both counts. Following a sentencing hearing, the court expressed its intention to vacate the voluntary manslaughter conviction and sentence Jeffers to forty years for felony murder. The court then entered an order stating that the conviction on Count I merged into Count II.

■ Jeffers first contends that the trial court erred in admitting Detective Outlaw's testimony regarding Taylor's statement. Jeffers correctly asserts that the statement was hearsay. The focus of the parties' arguments, however, is whether the statement was admissible under the *Patterson* [2] exception to the hearsay rule. Although *Patterson* and its progeny have been overruled by our supreme court in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, 653–654, that particular holding of *Modesitt* was designed for prospective application only. *See id.* at 654; *Gray v. State* (1991), Ind., 579 N.E.2d 605, 608. We must therefore

---

1. Jeffers concedes on appeal that his statement to Taylor fits within a recognized exception to the hearsay rule. However, he maintains that Detective Outlaw's testimony as to what Taylor said to him is inadmissible hearsay.

2. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

consider the application of the *Patterson* exception to this case.

The *Patterson* exception states, in essence, that the out of court statements made by a declarant who is present and available for cross-examination, may be used as substantive evidence. *Traver v. State* (1991), Ind., 568 N.E.2d 1009, 1011. There are two major foundational prerequisites to the admission of evidence under the *Patterson* exception: the declarant must be present and available for cross-examination and the declarant must be confronted with the statements and acknowledge or disavow them. *Stone v. State* (1989), Ind. App., 536 N.E.2d 534, 536. With regard to the former, our supreme court has explicitly held that the declarant need not testify *prior* to the admission of the hearsay evidence, provided that the declarant actually testifies during the trial. *Stamps v. State* (1987), Ind., 515 N.E.2d 507, 510; *See also Allen v. State* (1990), Ind.App., 562 N.E.2d 39, 41.

Jeffers maintains that the trial court erred in admitting the testimony of Detective Outlaw *prior* to Taylor's in-court testimony. As noted above, our supreme court in *Stamps* specifically held that the fact that the hearsay testimony is admitted prior to the declarant's in-court testimony is not error. 515 N.E.2d at 510. However, Jeffers' position arguably draws some support from the court's first holding in *Modesitt,* which, because it purported to interpret the *Patterson* rule as it existed at the time, is not limited to prospective application. In *Modesitt,* the court found reversible error where, prior to the testimony of the child victim, three separate witnesses testified that the victim had told them that Modesitt had molested her. 578 N.E.2d at 650.

In its discussion, the *Modesitt* court first noted that the *Patterson* rule had been criticized and that prior cases had warned against the use of hearsay statements as a substitute for in-court testimony. 578 N.E.2d at 561. In support, the court cited *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, *cert. denied* 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284, where it had allowed

three witnesses to testify to hearsay statements after the declarant had already testified and had been cross examined regarding the subject matter of those statements. In quoting from *Lewis* the court highlighted the fact that, in *Lewis,* the declarant had *already* withstood both direct and cross-examination regarding the out-of-court statements before those statements were submitted as substantive evidence. *Modesitt,* 578 N.E.2d at 651. The court went on to say:

"Here, by putting into evidence the victim's out-of-court charges against Modesitt by three separate and repetitive witnesses prior to calling the victim herself, the prosecutor effectively precluded Modesitt from effective cross examination of these charges. The jury first heard and was allowed to consider, as substantive evidence, the victim's statements made to her mother many months prior to trial. At this point, Modesitt had not yet had an opportunity to cross examine the victim herself concerning these charges and, obviously, he could not cross examine the mother concerning the truthfulness of the charges which had been leveled by her daughter. This lack of ability to cross examine the veracity of the statements continued through the repetitive testimony of the welfare caseworker and the psychologist. Prior to putting the victim on the stand, the victim's veracity had been, in essence, vouchsafed by permitting the three witnesses to repeat the accusations of the victim. We believe that immediate cross examination is the most effective, and that delayed cross examination is the least effective. Here, three witnesses told the victim's story before the victim herself testified. We hold, as did the Court of Appeals in *Stone v. State* (1989), Ind.App., 536 N.E.2d 534, that we could not say that the drumbeat repetition of the victim's original story prior to calling the victim to testify did not unduly prejudice the jury which convicted Modesitt."

578 N.E.2d at 651–652.

In *Stone,* the court addressed a case where, in addition to the child victim's testi-

mony regarding the events surrounding his molestation, five other witnesses testified that he had told them substantially the same thing (his mother testified twice). The *Stone* court first held that out-of-court declarations fell within the *Patterson* exception to the hearsay rule. *Stone,* 536 N.E.2d at 537. However, as the court noted, the *Patterson* exception does not make evidence admissible; rather, it merely renders the hearsay objection unavailable. *Id.* The court went on to find reversible error, however, in the admission of the cumulative testimony. The court reasoned that the victim's credibility "became increasingly unimpeachable as each adult added his or her personal eloquence, maturity, emotion, and professionalism to [the victim's] out-of-court statements." 536 N.E.2d at 540. According to the court, such "drum beat repetition" of the victim's original story unduly prejudiced the defendant such that admission of the cumulative testimony was an abuse of discretion. 536 N.E.2d at 541.

In light of *Stamps,* which the *Modesitt* court did not directly address, and *Stone,* which it relied upon, we do not read *Modesitt* as requiring, for purposes of the *Patterson* exception, that the declarant testify and be subject to cross-examination *prior* to the admission of the out-of-court statements. However, the fact that the statements are admitted before the declarant can be cross-examined is a factor that, like mere repetition, dilutes the effectiveness of cross-examination. Therefore, in a given case, such as *Modesitt,* repeated references to out-of-court statements entered into evidence prior to the declarant's in-court testimony may result in undue prejudice even though not excludible as hearsay.

In the present case, Jeffers' hearsay objection was properly overruled because the state satisfied the foundational requirements of *Patterson.* Even if Jeffers had properly objected to the prejudicial nature of the cumulative testimony, admission of such isolated testimony does not constitute

the type of "drum beat repetition" referred to in *Modesitt* and *Stone* as to amount to an abuse of discretion.[3]

Jeffers also claims that the admission of the hearsay statement deprived him of his confrontation rights under both the Indiana and the United States' constitutions. He contends that the hearsay statement did not carry with it sufficient indicia of reliability. However, the reliability concerns that Jeffers identifies (Taylor's motive and opportunity to fabricate) were properly subject to exploration on cross-examination of Taylor. Although cross-examination was not immediately available, Taylor was later subjected to a spirited cross-examination. Furthermore, Jeffers did not raise either the larger constitutional questions or his reliability concerns in his objection to Detective Outlaw's testimony and he has therefore waived those arguments on appeal. *See Jethroe v. State* (1975), 262 Ind. 505, 319 N.E.2d 133, 138.

Jeffers' final contention with regard to the *Patterson* statement is that the *Patterson* exception is limited to statements made by victims of child molestation or rape. However, while many of the cases have involved those crimes, nothing in the common formulation of the exception so limits its application, and it has been applied to cases outside that narrow range. *See Allen v. State* (1990), Ind.App., 562 N.E.2d 39 (murder).

■ Jeffers next contends that the jury verdicts were inconsistent and that the trial court improperly chose which one to sentence him upon. The state, however, correctly argues that the verdicts were not inconsistent.

While our supreme court has recognized at least the theoretical possibility that verdicts may be so "extremely contradictory and irreconcilable as to require corrective action," the verdict will generally survive claims of inconsistency where the evidence is sufficient to support the conviction.

---

3. Taylor later read to the jury from her statement to Detective Outlaw. However, she was available for immediate cross-examination, and, because she herself read from the statement,

there was no danger of a separate witness adding his or her eloquence, maturity, emotion or professionalism to the statement.

*Jackson v. State* (1989), Ind., 540 N.E.2d 1232, 1234. Jeffers has not pointed to any Indiana case in which a conviction has been reversed upon grounds of inconsistency between jury verdicts. Undaunted, Jeffers interprets his acquittal of murder and conviction of voluntary manslaughter as an indication that the jury did not believe any murder was committed. He reasons that the felony murder verdict is inconsistent with such a conclusion.

Jeffers' logic is flawed. The jury's verdict on Count I, not guilty of murder and guilty of voluntary manslaughter, required it to find that Jeffers intentionally killed the victim, but did so under sudden heat. I.C. § 35–42–1–3. The jury's verdict on felony murder required it to find that Jeffers killed the victim during the commission of a robbery. I.C. § 35–42–1–1(2). The finding of the mitigating factor of sudden heat in no way negates the jury's conclusion that Jeffers knowingly robbed the victim or that the victim was killed during the robbery. *See Abrams v. State* (1980), 273 Ind. 287, 403 N.E.2d 345, 347 (guilty verdicts on second degree murder as a lesser included offense of first degree murder and felony murder held not to be inconsistent).

■ Jeffers also maintains that, even if his convictions stand, the trial court erred in sentencing him on felony murder as opposed to voluntary manslaughter. We agree with Jeffers that where there has been only one killing, only one sentence may be imposed. *Owens v. State* (1982), Ind., 436 N.E.2d 1122, 1123. However, we disagree with his assertion that the trial court should have sentenced him on voluntary manslaughter. Where a person stands convicted of both a greater and lesser included offense, the greater conviction stands and the lesser should be vacated. *McCormick v. State* (1974), 262 Ind. 303, 315 N.E.2d 360, 361, *reh'g denied, McCormick v. State* (1974), 262 Ind. 303, 317 N.E.2d 428. Likewise, our supreme court has specifically stated that, where a defendant is convicted of both voluntary manslaughter and felony murder, the voluntary manslaughter conviction should be vacated

and sentence should be imposed on felony murder. *Sims v. State* (1988), Ind., 521 N.E.2d 336, 337.

■ Finally, Jeffers contends that, at the very least, we should order the trial court to vacate his voluntary manslaughter conviction. He points to a court order which, in relevant part states: "The Court finds the conviction for Voluntary Manslaughter, a Class A Felony, Count I, merges into the conviction for Murder in the perpetration of Robbery, Count II." (Record, p. 56.) According to Jeffers, that order does not suffice to vacate his voluntary manslaughter conviction, although he concedes that he was only sentenced upon Count II. However, an order "merging" one judgment of conviction into another, in effect, negates the merged judgment and only one judgment of conviction exists. *See Pinkett v. State* (1976), 30 Md.App. 458, 352 A.2d 358, 367.

For the reasons contained in this opinion, we affirm the judgment of the trial court.

AFFIRMED.

BARTEAU and ROBERTSON, JJ., concur.