WENDELL BEARD v. STATE OF MARYLAND

[No. 421, September Term, 1980.]

*Decided December 15, 1980.*

The cause was argued before MORTON, MOORE and WEANT, JJ.

*Joseph L. Evans, Assigned Public Defender,* with whom was *Michael E. Marr, Assigned Public Defender,* on the brief, for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Gary*

*Bass, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant, Wendell Beard, was convicted by a jury sitting in the Criminal Court of Baltimore (Murphy, J., presiding) of 1) first degree murder; 2) unlawful use of a handgun in the commission of a felony or crime of violence; 3) unlawfully carrying a handgun; and 4) unlawful use of a credit card. A life sentence was imposed on the murder conviction; fifteen years consecutive on the handgun violation (Md. Ann. Code art. 27, § 36B (d)); three years concurrent on the second handgun violation (Md. Ann. Code art. 27, § 36B (b)); and three years concurrent on the credit card violation.

In this appeal the following issues are presented:

"1. Should the convictions for the use of a handgun in commission of a felony and for possession of a handgun be reversed in that the State failed to show that the weapons in question were, in fact, handguns?

2. Did the trial court commit plain error in failing to instruct the jury as to the definition of and burden of proof for 'handgun'?

3. Did the trial court commit plain error in inappropriately commenting to the jury that a finding of guilt on the robbery count would be inconsistent with an acquittal on the homicide count?

4. Was the evidence sufficient to support the jury's verdict?"

The record reveals that about 1 p.m. on September 1, 1979, Officer George Trainor responded to a call over his police car radio and upon his arrival at the 900 block of Hendler's Lane in Baltimore City he found the body of Beryl Friedrick, a white male, 43 years of age, lying in a pool of blood beside

a blue Ford Torino. It was stipulated that Mr. Friedrick was pronounced dead at the Maryland General Hospital, the cause of death being a gunshot wound to his head, fired at close range from a small caliber weapon.

Darlene Roles testified she had known appellant about thirteen years and that sometime in the afternoon of September 1, 1979, he arrived at her apartment and gave her "a brown and beige bag" which he requested that she hold for him. He also showed her some credit cards in the name of Beryl Friedrick and said he wanted to turn them over to her boyfriend, Martin Venable, "because he heard Marty could work credit cards." After appellant left the apartment, according to Miss Roles, she looked in the bag and observed blood stained clothing and a "gun and some bullets inside the cloth."

Later in her testimony the following colloquy occurred:

> "THE COURT: What kind of a weapon was it that you saw in the bag? Do you know the difference between a revolver and automatic pistol?
>
> A. No. I don't know nothing about guns as far as the name of them.
>
> THE COURT: Well, do you know the difference between the kind that revolves when the trigger is pulled and the kind that ejects the shell through the top?
>
> A. No.
>
> THE COURT: Can you describe the one that you saw?
>
> A. Well, the one that I seen was — it was sort of big and brown — rusty — it looked like an old gun to me. It looked rusty like. And it was big. It was rather big."

The only other testimony regarding the gun was as follows:

"By MR. DANEMAN [Attorney for Defendant]:

Q. Ma'am, this here big, rusty gun, was it bigger than Martin Venable's gun that he left in your apartment?

A. Yes.

Q. Martin Venable's gun was a .38, wasn't it?

A. I don't know what it was."

We think there is real merit in the appellant's contention that his convictions for the use of a handgun in the commission of a felony and for the unlawful possession of a handgun should be reversed because the State failed to show that the weapon in question was, in fact, a handgun. We have set forth above the only testimony with respect to the description of the gun allegedly used by appellant and it is self-evident that this evidence falls far short of proving, beyond a reasonable doubt, that the victim's death resulted from the use of a handgun as that term is defined in Md. Ann. Code art. 27, § 441.

It is certainly true that the trial judge sought to elicit from the witness, Miss Roles, a more particularized description of the gun than the State had produced with her simple answer that the bag had contained "a gun and some bullets." The record does not disclose the size or capacity of the bag, which evidence might have indicated that it was only large enough to conceal a handgun. While it is apparent from Miss Roles' testimony that she knew little, if anything, about guns, she did not strike us as anything but an intelligent witness. It would have been a simple matter to ask her whether the bag, which the appellant handed to her, contained a gun which is ordinarily fired by the use of a hand or whether it was a gun which normally was fired from the shoulder. Her answer might have shed some descriptive light upon the type of gun in the bag.

So often cases come before this Court when it is evident that the State makes little, if any, effort to produce evidence which would make clear that the weapon is, in fact, a handgun and yet that is the very core of the crime which the State is attempting to prove was committed by the accused. We think the prosecuting attorneys throughout the State would be well advised to give more than lip service to establishing the type of gun used by the accused.

The evidence in this case does not, in our opinion, demonstrate beyond a reasonable doubt that the gun used by the appellant was a handgun. It probably was. On the other hand, the issue is much too critical to the fair trial rights of the appellant to resolve the issue through speculation, conjecture or probability.

Accordingly, we reverse the judgments of conviction for the handgun violations.

In view of this holding we do not reach the appellant's second issue that the trial court committed plain error in failing to instruct the jury regarding the definition and burden of proof for a handgun.

The third issue involves the trial judge's response to a question submitted by the jury during the course of its deliberations. No objection to the court's response was interposed by appellant's trial counsel and since we cannot say there was any plain error in the instructions material to the rights of the appellant, the issue is not properly before this Court. Maryland Rule 757 h.

Finally, we find no merit in appellant's contention that the evidence was legally insufficient to sustain his conviction of first degree murder and his conviction for the unlawful use of a credit card.

There was evidence that within hours of the murder the appellant handed Miss Roles credit cards which had been issued in the name of the victim; there were bloodstained clothes and a gun in the bag he handed her to keep for him; appellant's fingerprints were found on the victim's car; there was evidence that he and a witness named Logan attempted to use one of the credit cards to purchase a pair of trousers;

and finally there was evidence that appellant told Logan he had shot a man to get the card. There was ample evidence to support the convictions.

> *Judgment of conviction for first degree murder, affirmed; judgment of conviction for unlawful use of a credit card, affirmed; judgment of conviction for unlawful use of a handgun in the commission of a felony, reversed; judgment of conviction for unlawfully carrying a handgun, reversed; one-half the costs to be paid by appellant; one-half the costs not reallocated as part of the judgments of this court pursuant to Maryland Rule 1082 f.*