## JAMES L. TURNER *v.* STATE OF MARYLAND

[No. 772, September Term, 1979.]

*Decided March 10, 1980.*

The cause was submitted on briefs to MOORE, LISS and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Nancy Louise Cook, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Diane G. Goldsmith, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Steven D. Wyman, Assistant State's Attorney for Baltimore City,* for appellee.

WILNER, J., delivered the opinion of the Court.

Appellant was convicted by a jury in the Criminal Court of Baltimore of larceny and assault. He was sentenced to prison for 18 months on the larceny conviction and 12 years, consecutive, for the assault. In this appeal, he contends:

(1) He was improperly induced to testify in his own defense by the court's "misadvisement" relating to burden of proof;

(2) He was wrongfully charged, convicted, and sentenced for larceny and assault;

(3) The court gave an erroneous instruction on the definition of a "principal";

(4) The court erred in failing to grant a new trial because of incompetence of counsel; and

(5) The evidence was insufficient to sustain his convictions.

We shall consider these complaints in a somewhat different order: (5), (2), (1), (3), (4).

### (5) *Sufficiency of the Evidence*

David Papilon stated that, on November 18, 1978, he was walking up Park Avenue, in Baltimore City, when two men accosted him and asked him for money. He refused, whereupon they led him up the outside steps of an apartment dwelling, on to the vestibule. One of the men threw him to the ground and the other searched his back pockets, removing his wallet containing $38. Papilon identified one of the men as appellant.

It so happened that Police Officer Lee Saunders and two fellow officers were driving by in a patrol car as all of this was happening. Saunders saw two black men strike a white man and drag him into a doorway where one removed a wallet from the victim's pocket. Saunders and the other officers immediately stopped, gave chase, saw the assailants go into a nearby shack, and captured them both as they were attempting to escape through a window therein. Papilon's wallet was found inside the shack. Saunders also positively

identified appellant. Officers George Smith and Leonard Baze corroborated most of Officer Saunders' testimony and also identified appellant as one of the two assailants.

From this, we can quickly dispose of appellant's fifth complaint. The evidence more than sufficed to sustain the convictions of larceny and assault.

### (2) *Improper Charge and Sentence*

For whatever reason, appellant was never formally charged with robbery, although the evidence adduced at trial would seem to have supported such a charge. Instead, he was charged (and convicted) only of the lesser included offenses of larceny and assault. Ordinarily, a defendant would be quite well satisfied with such a circumstance, and, indeed, appellant never raised any complaint about it before or during his trial. It is only after the sentences were imposed that he (or his counsel) realized that, had he been charged and convicted of robbery, his maximum sentence would have been 10 years. The assault and larceny convictions would have merged into the robbery conviction as lesser included offenses. By failing to charge robbery, he thus claims, the State has managed to secure a longer sentence than was otherwise possible; and this, he cries, is unfair, unconstitutional, and illegal. He relies on *Roberts v. Collins,* 544 F.2d 168 (4th Cir. 1976), and asks that his convictions be reversed.

In *Roberts,* the Court had before it, in a *habeas corpus* proceeding, a situation in which a defendant had been charged with a variety of offenses, headed by two counts of assault with intent to murder. All of this grew out of an attack on two police officers. At some point, and for reasons not entirely clear in the Opinion of the appellate or the district court (*Roberts v. Collins,* 404 F. Supp. 119 (D. Md. 1975)), Roberts entered pleas of guilty to a number of the charges, including simple assault. Based upon these pleas, he was convicted on the two assault charges and was sentenced to consecutive terms of 20 years on each conviction — a total of 40 years.[1] Had he been tried and convicted of the two

---

1. Roberts was also convicted of three other crimes growing out of the incident, for which he received additional consecutive sentences totalling 14 years. His aggregate sentence was thus 54 years.

assaults with intent to murder charges, his maximum sentence would have been 15 years.[2]

Roberts contended in the Federal proceeding that the 40-year sentence imposed on the simple assault convictions was cruel and unusual. The District Court applied the four factors set forth in *Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), and one more relied on in *Ralph v. Warden,* 438 F.2d 786 (4th Cir. 1970), concluding, as to each, that (1) because the Maryland legislature had established 15 years as the maximum sentence for assault with intent to murder — a much more serious offense than simple assault — the imposition of 20 years on the simple assault charge was, in effect, a circumvention of the legislative judgment; (2) it could discern no legislative purpose in not prescribing a maximum penalty for simple assault; (3) there being no maximum, it was not possible to compare the Maryland situation with that in other States; (4) 20 years was a relatively long sentence in comparison with punishments authorized for comparable crimes in Maryland; and (5) because it was unable to find any other reported instance of a 20-year sentence being meted out for simple assault, this was "rare and severe."[3] Upon those findings, it concluded that such a sentence, in light of the lesser maximum for assault with intent to murder, was cruel and unusual, and therefore unconstitutional.

The Fourth Circuit Court of Appeals affirmed for the reasons set forth by the District Court, and also because "[w]hen, to relieve the state of the burden of proving all elements of the greater offense of assault with intent to murder, a defendant tenders a plea to the lesser included offense of simple assault, he ought not to be held to have exposed himself constitutionally to greater punishment...." 544 F.2d at 170.

---

2. The Federal court opinions are not clear on this. It would seem that there were two charges of assault with intent to murder, each carrying a maximum penalty of 15 years. *See Roberts v. Warden,* 206 Md. 246 (1955). The Federal courts, without discussion, assumed, however, that had the case proceeded on the more serious charges, only one sentence — a maximum of 15 years — could or would have been imposed.

3. It overlooked *Adair v. State,* 231 Md. 255 (1963).

We note first, for appellant's edification, that even if these Federal decisions were applicable here, they would require no more than a remand for resentencing within the 10-year maximum for robbery. They would not affect the convictions. *See* 544 F.2d at 170.

More significant, however, is the fact that, in arguing that we adopt and apply the reasoning (and conclusion) of the Federal decision, appellant overlooks the fact that the Maryland Court of Appeals reached an exactly opposite result in the same case. *See Roberts v. Warden,* 242 Md. 459 (1966), *cert. den.* 385 U.S. 876.[4] That decision has never been overruled by the Court of Appeals, or by the Supreme Court; and it therefore remains binding on this Court, to the exclusion of the contrary Federal decisions. *See Brown v. State,* 38 Md. App. 192 (1977).

Quite apart from that, we perceive a subtle, but nonetheless significant, distinction between the *Roberts* situation and that *sub judice.* In *Roberts,* the defendant had actually been charged with the greater inclusive offense. The maximum possible exposure was clear and measurable throughout the case and at the time of sentence. Such exposure is not so clear and measurable when the heavier charge is never brought; nor, in that instance, is the logic applied by the Federal courts quite so compelling.

The State may have all sorts of valid reasons for charging one offense rather than another — a lesser offense rather than a greater. It acts upon the evidence available to it — known to it — at the time; and that evidence may be quite different from what unfolds at trial. The State may decline to charge a more serious offense because, at the time of charging, the evidence only indicates a lesser offense, or suggests circumstances calling for compassion. This is part of the discretion accorded to State's Attorneys. *See Murphy v. Yates,* 276 Md. 475 (1975); *Brack v. Wells,* 184 Md. 86 (1944). At trial, evidence may appear that puts the defendant (his actions and character) in a much different light. Is the judge,

---

4. In his role as advocate, the Public Defender may have good reason to argue that the Court of Appeals decision in *Roberts* should no longer be followed; but he is not at liberty simply to ignore it as though it did not exist.

in sentencing, to be bound to statutory maxima for every conceivable crime with which the defendant could have been charged based on the evidence actually revealed? If so, we perceive a great deal of confusion, second-guessing, and error.

The Federal decisions in *Roberts* are not controlling upon us, and the rationale for them is wholly inapplicable to the circumstances here. Appellant's sentences were lawful ones. This Court, since *Roberts,* has sustained 20-year sentences for assault. *Brown v. State, supra,* 38 Md. App. 192; *Raley v. State,* 32 Md. App. 515 (1976), *cert. den.* 278 Md. 731, *cert. den.* 431 U.S. 965 (1977). *See also Wilkins v. State,* 5 Md. App. 8 (1968); *Adair v. State, supra,* 231 Md. 255. The twelve-year sentence was not unlawful, nor the eighteen months for larceny.

### (1) *"Misadvisement" By the Court*

At the conclusion of the State's case, it is fair to say that appellant was in deep trouble. The evidence against him has already been summarized. Four eye witnesses — the victim and three police officers — identified him as one of two men who assaulted David Papilon and stole his wallet containing $38 in cash. The court very quickly denied appellant's motion for judgment of acquittal.

The court then explained to appellant that the effect of his ruling on the motion was a finding that the State had "met its burden of proof at this juncture" and had established "a prima facie case against you on both charges, which means you now present any evidence you wish to present." The court advised appellant that he was free to testify or not to testify and to present any other witnesses. Appellant then indicated a lack of understanding about the motion. "What motion?" he asked.

The court explained:

> "The motion that counsel has filed for judgment of acquittal to dismiss the charges. I have denied that in finding that there was sufficient evidence for you to need to put on a defense if you wish to do that.

> "*At least for the purpose of the State, I found that it had met its burden of proof and had put on a prima facie case, which means, that the burden is now shifted from the State to you for the purpose of any defense that you wish.* They have proven their case to where it is a point for the jury to make a determination. At this point they have given us, at least in my opinion, enough evidence to say that the prima facie obligation has been met.
>
> "And your choice, if you wish to do it, is to take the witness stand or not to take the witness stand, that is your right. I mean to imply, you have a right to put on any evidence you wish to, or you don't have to put on any evidence if you don't wish to." (Emphasis supplied.)

The record shows that appellant then conferred with his counsel for a few moments, after which he announced his decision to testify.

Stressing the underscored part of the court's response, he now claims that he was "misadvised" or misled by the court into thinking that he had the burden of producing evidence to rebut the State's evidence, that no such burden could lawfully be thrust upon him, and that "[t]his comment may well have influenced [his] decision to testify." Appellant's brief, p. 9.

His complaint is grounded upon a misapplication of the concepts enunciated in *Mullaney v. Wilbur,* 421 U.S. 684 (1975). A fair reading of the court's comment, taken in context, does not suggest that the ultimate burden *of persuasion* was being shifted. The court was explaining to appellant that if the case went to the jury at that point, there was sufficient evidence to permit a finding of guilt; what was shifted to him was the burden of producing any evidence he cared to produce in defense of the charges. Obviously, the State was not going to produce a defense for him. *See Evans v. State,* 28 Md. App. 640, 725 (1975), *aff'd* 278 Md. 197 (1976); *Gilbert v. State,* 36 Md. App. 196, 200 (1977). Although the court could have been somewhat more careful in its choice of

words, we do not believe that it "misadvised" appellant or contravened the requirements of *Mullaney.*

### (3) *Instruction to the Jury*

The court gave the jury the following instruction, among many others:

> "Now, the Court instruct the Jury in this case and it is quite important for you to remember, that if you find from the evidence in this case, that the defendant Mr. Turner, *was present at the scene of the crime,* and in close proximity, or in concert with the actual perpetrator of the offense *for the purpose* of assisting, if necessary, or for *watching* or preventing interference, or for the purpose of encouragement at the time of the commission of the crime then the Jury may find the defendant a principle (sic) to the crime and as such guilty of the crime as charged.
>
> "If you find from the evidence, the defendant was a participant in the alleged assault and larceny, you must find the defendant guilty of the alleged assault and larceny under these charges. That means if you believe that the defendant was at the scene of the crime, with the juvenile, whoever that person might have been, even if the defendant himself did not take the wallet, did not hit the victim in the case and *was there for the purpose of assisting, or watching,* or acting in concert with him, he is equally as guilty of the charge of larceny and assault as the person he was with, even though he did not actually do the touching, did not actually take the wallet from the person of the victim." (Emphasis supplied.)

No objection was made to this instruction, but appellant now asks that we review it anyway because it amounted to plain error material to his rights. Maryland Rule 757 h. This instruction, he says, permitted the jury to convict him merely because of his presence at the scene, which, of course, is not permissible. We do not read the instruction that way, and we therefore find no plain error.

### (4) *Incompetence of Counsel*

Appellant indicated no dissatisfaction with his trial counsel until after he was convicted. Only when the court had rejected each of his grounds for a new trial did he suggest that his counsel was incompetent. The court responded to this in a somewhat equivocal fashion. It said:

> "I'll not make a determination on that. That's not for this court to determine.
>
> "The case was tried and the Court believes that your counsel did a very admirable trial in the case. If you feel differently, that is certainly your right."

In the same breath, the court seemed to determine that which it said it would not consider. In context, however, we think that the second statement was not intended as a ruling on the merits of appellant's contention, but more as an afterthought; it appears that the court simply declined to address the issue.

The court was wrong, however, in suggesting (or concluding) that the competence question was not for it to determine. Where it is properly raised as a ground for new trial, the trial court may consider it. Having said that, we hasten to add that, in all events, the granting of a new trial is discretionary with the court. There may be occasions where the incompetence or ineffectiveness of counsel is so blatant and so apparent to the court that a new trial ought to be granted without further delay. In that circumstance, it is clearly within the power and discretion of the trial court to grant such relief. In other cases, the issue may not be so clear. Its resolution may require a full evidentiary hearing. In that event, the court may, in the proper exercise of its discretion, decline to consider the issue, and leave the defendant to his equally adequate post-conviction remedies.[5]

---

5. In such a case, there may be a number of serious practical problems in addressing the issue at that point. For one thing, the defendant will usually be without independent counsel; his lawyer will have become his adversary prior to the termination of their professional relationship. Moreover, to the extent that the complaint involves errors or omissions not apparent from the actual proceedings in court, as in this case, collateral evidence will be needed to resolve it; and that evidence — witnesses and documents — may not then

In this case, we find no abuse of discretion in the court's declining to consider the issue.

*Judgments affirmed; appellant to pay the costs.*

---

be readily available. Finally, because the granting of a new trial is discretionary with the court, and appellate review of its action is therefore quite limited, a defendant may be running a significant risk in litigating the issue in that type of proceeding. All of these are relevant matters for the court to consider in deciding whether to address the incompetence issue in connection with a motion for new trial.