486 A.2d 240

**Arnold MANIGAULT**

**v.**

**STATE of Maryland.**

**No. 444, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Jan. 10, 1985.

272

Barbara L. Matthews, Assigned Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Valerie J. Smith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Evelyn O.A. Darden, Asst. State's Atty. for Baltimore City, Baltimore, on brief), for appellee.

Argued before GILBERT, C.J., and MOYLAN and ADKINS, JJ.

MOYLAN, Judge.

As we try to honor the Double Jeopardy Clause's prohibition against multiple punishment for "the same offense," multiple indictments pose problems in terms of adding up the legitimate units of permitted prosecution. A single multi-count indictment poses similar problems. The potential problems, however, increase exponentially when we encounter multiple multi-count indictments.

The appellant, Arnold Manigault, went to trial before a Baltimore City jury on multiple multi-count indictments. He was indisputably guilty of perpetrating assaults, in the course of a single criminal episode, upon two separate victims. The Grand Jury returned separate indictments, charging similar sets of alleged crimes committed upon each victim. Except for naming different victims, the two indictments duplicated each other. Each was drawn in four counts.

Each first count charged the felony of assault with intent to rob in violation of Md.Ann.Code, Art. 27, § 12 (1982 Repl.Vol.). Each second count charged the lesser included offense of common law assault. Each third count charged the unlawful carrying of a handgun. Each fourth count charged the use of a handgun in the commission of a crime of violence. In each indictment, the three latter counts referred back to the first count, as they "further present[ed] the said Arnold Manigault late of said City"; as they designated the charging body as "the Jurors aforesaid, upon their oath aforesaid"; as they particularized the situs of the crime as "in the City aforesaid"; and as they pinpointed the time of the crime as "on the said day, in the said year." Indeed, without such reference back, one of the two fourth counts would have been redundant, for each was a verbatim reproduction of the other. The only thing that allowed them to retain individual identities was implicit reference back to a first count, which specified a particular crime against a particular victim. This implicit reference to the leading or titular count, which the State seeks to avoid

in another context, is ironically the only thing that saves the State from the error of double-charging in this context.

With these two indictments, as with most multi-count indictments, the various lesser included and other more or less related counts take on coloration from the "flagship count." It is the "flagship count" that gives the entire indictment its name and its identity.

The initial problem with this prosecution is that the two "flagship counts" had no business being in the case. Upon timely motions for judgments of acquittal at the close of the State's case, those counts, charging assault with intent to rob, were promptly and properly buried; as with Maitland's forms of actions, however, the "flagship counts" may have been "buried, but they rule us from their graves."

The lead counts should have charged assault with intent to murder. There was no suggestion of robbery or any other larcenous motive in this case. There had been, rather, a history of bad blood, rancor, and earlier fights between the appellant and one of the victims, Darryl Wilson. There had been a similar history of hostility, friction, and physical violence between the appellant's girlfriend and the second victim in this case, Desire Moore. There had been, as well, a history of animosity between the families and respective friends of the contending factions. On September 23, 1983, at about 10 p.m., Darryl Wilson and Desire Moore were standing on the corner of Ashland and Milton Avenues, when the appellant approached with a drawn .38 caliber revolver. Darryl Wilson and Desire Moore ran in opposite directions, the appellant pursuing Darryl Wilson. He fired at Wilson six times, hitting him with three of the shots.

The initial Statement of Charges in the district court charged the appellant with assault with intent to murder. The front cover of the two "True Bills" returned by the Grand Jury carried the caption "assault with intent to murder." There is no disputing that this was the crime the State intended to charge. However the mistake occurred,

there is similarly no disputing that this was not the crime which the State actually did charge. What matters is not what the State intended to do, but what the State did. One must live with even a clerical mistake, if the mistake goes to substance and not to mere form.

With the probable explanation being that both assault with intent to murder and assault with intent to rob are found within the same Art. 27, § 12, an indictment clerk erroneously drafted each first count so as to charge assault with intent to rob. With the exception of the defense attorney, no one noticed the mistake until the motions for judgments of acquittal were suddenly made at the end of the State's case. The motions were, of course, granted. The trial went forward on the remaining three counts of each indictment. The appellant was convicted and sentenced on all six of the remaining counts.

He received a sentence of 15 years' imprisonment for the simple assault on Darryl Wilson. He received a concurrent sentence of three years for the possession of a handgun charged in the Darryl Wilson indictment and a concurrent sentence of 15 years for the use of a handgun while committing a crime of violence, also charged in the Darryl Wilson indictment. He received a concurrent sentence of 15 years for the simple assault on Desire Moore. He received a concurrent sentence of three years for the possession of a handgun charged in the Desire Moore indictment and a concurrent sentence of 15 years for the use of a handgun violation charged in the Desire Moore indictment. The net result was a 15-year sentence for the assault on Darryl Wilson, with the five other sentences being directly or indirectly concurrent with it.

### The 15-Year Sentences for Common Law Assault

With commendable forbearance, the appellant does not attack the legal sufficiency of the evidence to support the two convictions for common law assault. He does most strenuously attack, however, his sentences of 15 years'

imprisonment upon those convictions. His attack is well mounted.

■ It is, of course, true that there is no upper limit on the common law sentence that may be imposed for a conviction of common law assault, save only that the sentence be not cruel and unusual. *Gleaton v. State,* 235 Md. 271, 277–278, 201 A.2d 353 (1964); *Roberts v. Warden,* 242 Md. 459, 460–461, 219 A.2d 254 (1966); *Simms v. State,* 288 Md. 712, 725–726, 421 A.2d 957 (1980); *Walker v. State,* 53 Md.App. 171, 193–200, 452 A.2d 1234 (1982). As Judge Wilner pointed out for this Court in *Turner v. State,* 45 Md.App. 168, 172–173, 411 A.2d 1094 (1980), the State could easily have avoided any upper limit or "cap" being placed on the assault sentence by indicting for common law assault alone. When, however, the State relegated the common law assault counts to the shadow of the first counts, charging the statutory felonies of assault with intent to rob, it imposed an upper limit upon itself.

■ As Judge Eldridge pointed out for the Court of Appeals in *Simms v. State, supra,* at 288 Md. 724, 421 A.2d 957:

> "When a defendant is charged with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial and when the defendant is convicted only of the lesser included charge, he may not receive a sentence for that conviction which exceeds the maximum sentence which could have been imposed had he been convicted of the greater charge."

The *Simms* situation is indistinguishable from the one here. In that case, as here, the defendant had been found not guilty under a first count charging assault with intent to rob. That crime, as it still does, carried a maximum penalty of 10 years. The actual conviction in *Simms* was for the lesser included charge of simple assault, for which a sentence of 12 years' imprisonment was imposed. *Simms* held that 10 years was the upper limit under the pleading configuration of that indictment. In *Walker v. State, su-*

*pra,* at 53 Md.App. 189, 452 A.2d 1234, we discussed the *Simms* rule:

> "The tightly reasoned opinion of Judge Eldridge for the Court of Appeals in *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980), dealt with the sentencing limitations which the State imposes on itself, advertently or inadvertently, when it charges two offenses which can be deemed 'the same offense' within the contemplation of double jeopardy language. As long as there is neither multiple conviction nor multiple punishment, the double jeopardy clause itself is not engaged. *Under Maryland common law, however, the State is deemed to have established the graver of the two offenses as the 'flagship' crime, thereby setting the upper limit for punishment purposes.*" (Emphasis supplied).

*See also Gerald v. State,* 299 Md. 138, 472 A.2d 977 (1984).

■ Under the indictments actually handed down in this case and upon which the appellant went to trial, the statutory maximum that could have been imposed under the first counts was 10 years. Ten years, therefore, became the "cap" upon the sentences that could be imposed upon the lesser included second counts. Accordingly, we will vacate the two sentences for the two common law assault convictions and remand for resentencing.

### The Dual Convictions for Possession of a Handgun

The third count of the Darryl Wilson indictment and the third count of the Desire Moore indictment charged precisely the same offense, to wit the unlawful wearing, carrying, or transporting of a handgun in violation of Md.Ann.Code, Art. 27, § 36B (1982 Repl.Vol.). The appellant is understandably chagrined at having been convicted twice and having been sentenced twice for the same offense in clear contravention of the Double Jeopardy Clause. This is no mere question of merger which we might decline to notice under *Rose v. State,* 37 Md.App. 388, 393, 377 A.2d 588 (1977), when there is no objection below and where the sentences are made to run concurrently. That situation

contemplates a proper general conviction for both a greater inclusive offense and a lesser included offense with the lesser conviction being merged or subsumed into the greater simply to avoid multiple punishment. Here, by way of contrast, we have an improper second conviction for the same, identical offense.

A single criminal episode may, of course, give rise to a number of separate criminal charges, some of which may be multiplied but some of which may not. The key is to identify the unit of prosecution. Both an aggravated assault (Count 1) and a simple assault (Count 2) may properly be multiplied when there are multiple victims. The unit of prosecution is the victim. With respect to the use of a handgun to perpetrate a crime of violence (Count 4), the unit of prosecution is the crime of violence. Assuming that the other elements have been proved, two victims imply two crimes of violence. That, in turn, implies two separate crimes of using a handgun to commit a crime of violence.

■ With respect to the possession of a handgun (Count 3), however, the unit of prosecution is the gun, not the victim. *Pinkett v. State,* 30 Md.App. 458, 352 A.2d 358 (1976). There was only one gun in this case and there was, therefore, only one crime of possessing a gun. A single assault committed with two guns could yield two possession convictions, but even multiple assaults with a single gun may yield only one possession conviction. Accordingly, the conviction under the third count of the Desire Moore indictment, charging the unlawful possession of a handgun, will be reversed as a multiple conviction for the identical offense charged in the companion indictment.

### *The Convictions for the Use of a Handgun to Commit a Crime of Violence*

A "crime of violence" within the contemplation of Art. 27, § 36B(d) is a crime that is so defined by Md.Ann.Code, Art. 27, § 441 (1982 Repl.Vol.). A simple, common law assault does not qualify. Either an assault with intent to rob or an

assault with intent to murder would so qualify.  The issue before us is that of what is the "crime of violence" contemplated by the fourth count of each of these indictments.  Is it, as the State contends, assault with intent to murder?  Or is it, as the appellant contends, assault with intent to rob?  It is purely a question of pleading.

If the two fourth counts had charged the use of a handgun to commit the crime of assault with intent to murder, the evidence would clearly have been legally sufficient to support convictions.  If, on the other hand, the two fourth counts charged the use of a handgun to commit the crime of assault with intent to rob (as we hold they did), the evidence was not legally sufficient to support those convictions.

This is so not because the first counts, charging assault with intent to rob, resulted in judgments of acquittal, but rather because the same reasoning would apply to the handgun counts.  The similar fates of the first count and the fourth count would be coincidental, not consequential. The fourth count falls, if it must, not because the first count has earlier fallen but because the reasons which led to the dismissal of the first count would also, but quite independently, dictate the dismissal of the fourth count.  It was of this phenomenon that we spoke in *Ball v. State*, 57 Md.App. 338, 388, 470 A.2d 361 (1984):

> "The validity of his position, [that a charge should be dismissed for evidentiary insufficiency] however, will not depend upon the disposition of that companion charge, for his position would be just as strong if the companion charge had never been in the case.  *What happened or didn't happen to the companion charge is coincidental.* It is rather the case that the external events themselves that made the granting of the motion on the companion charge proper would also compel the granting of the motion as to the felony-murder.  *We look to the disposition of this charge in a vacuum."*  (Emphasis supplied).

The issue of evidentiary sufficiency under the fourth count is a self-contained phenomenon, totally uninfluenced by what may have happened to other counts. If the evidence is not legally sufficient to sustain a conviction under the fourth count, that count must fall, regardless of whether the first count 1) has consistently been dismissed as well; 2) has inconsistently not been dismissed; 3) has had no action taken as to it; or 4) has never even been charged as part of the indictment. Conversely, if the evidence is legally sufficient to sustain a conviction under the fourth count, that count should not fall, notwithstanding the fact that the related first count has inconsistently been dismissed. It is the difference between arguing 1) that B should happen *because* A happened, and 2) that B should happen *for the same reason that* A happened. The fates of the two related counts are not in any cause-and-effect relationship to each other; they are, rather, two independent effects proceeding (hopefully consistently, but not necessarily so) from the same cause.

■ In this case, and quite aside from whatever happened to the first counts, the evidence was not legally sufficient to support convictions upon the fourth counts, for the reason that the predicate "crimes of violence"—the assaults with intent to rob—had no support in the evidence. The motions for judgments of acquittal as to these counts should have been granted as a matter of law.

In a dogged effort to resist the inevitable, the State persists in claiming that each of the fourth counts somehow charged the use of a handgun to commit the violent crime of assault with intent to murder. That effort simply will not fly.

The State is correct in its assertion that a charge drawn in accordance with the language of Art. 27, § 36B(d) is acceptable, as a matter of general pleading law, if it charges "the use of a handgun to commit a crime of violence." In the context of a lone count in a lone indictment, that charge could be sustained upon the proof of any

"crime of violence" listed in § 441. To resolve any ambiguity in that regard, the defendant would have proper recourse to a demand for particulars.

That context, however, is not the context in which the charges are found in the present case. Each fourth count depends, for a large part of its substance, upon its first count. In a half-dozen separate regards, each fourth count would be insufficient, as a matter of pleading law, if it existed in a vacuum. Each fourth count does not identify the charging institution except by reference to the first count. Each fourth count fails to locate the place of the crime so as to establish jurisdiction and/or venue except by reference to the first count. Each fourth count fails to pinpoint the time of the crime, avoiding among other things a possible limitations problem, except by reference to the first count. The two fourth counts, moreover, would be redundant duplications of each other if they existed in a vacuum. It is only by reference to their respective first counts that one can be deemed to charge the use of a handgun on Darryl Wilson and the other can be deemed to charge the use of a handgun on Desire Moore. How, except for such reference, do we know that both fourth counts do not charge the use of a handgun on Darryl Wilson? How, except for such reference, do we know that both fourth counts do not charge the use of a handgun on Desire Moore? How, except for such reference, do we know that one or both of the fourth counts do not charge the use of a handgun upon some third victim, unnamed in either indictment? The particularization, which may depend upon a bill of particulars elsewhere, emanates from the very context here. It is inconceivable that each fourth count could, of necessity, refer back to its first count in so many ways to sustain its very viability and suddenly be deemed not to refer back to that first count for purposes of identifying the "crime of violence."

In answering a hypothetical question at oral argument, the State agreed that if the evidence in this case had been legally sufficient to sustain convictions for assault with

intent to rob, under the inadvertently drawn first counts, the proof of those predicate "crimes of violence" would have supported convictions under the fourth counts, as drawn. The State is unquestionably correct in its response to that hypothetical question. Each fourth count, however, may not refer both to an assault with intent to rob, that was charged, and also to an assault with intent to murder, that was not. It must, under the circumstances of this case at least, be one or the other. In the configuration of these indictments, there can be no doubt that it refers to the former and not to the latter.

A further hypothetical may help to reveal the illogic of the State's position. A defendant might well be guilty of premeditated first-degree murder perpetrated in the course of an armed robbery. The fact of premeditation would preclude a merger of the robbery into the murder; there would be two separate crimes of violence—murder and robbery. Each could support a separate conviction for the use of a handgun to commit a crime of violence. Two convictions and two sentences for using a handgun to commit a crime of violence could not, however, arise out of a single count charging such crime. Where clearly distinct "crimes of violence" are alternative or conjunctive possibilities, each possible separate violation of Art. 27, § 36B(d) requires its own separate pleading.[1]

---

1. This is not to suggest that under other circumstances, involving other configurations of counts, a count charging the use of a handgun in a crime of violence could not have a limited flexibility in terms of its reference. When it is contained, for instance, in a readily identifiable vertical ladder of charges of ascending and decending gravity, its initial reference is to the "flagship" count for all of the reasons already discussed. If the fact finder, however, were to find quilt not on the "flagship" count but on a lesser included offense, which also happened to qualify as a "crime of violence," the reference of the handgun count could, of course, slide downward to that lesser included "crime of violence." On a typical multi-count indictment for armed robbery, for instance, the handgun count could, depending on the verdict of the fact finder, refer to Count 1 (armed robbery); Count 2 (attempted armed robbery); Count 3 (simple robbery); or Count 4 (assult with intent to rob). Although it could even refer (linguistically

Holding as we do that both fourth counts implicitly charged the use of a handgun to commit the crime of assault with intent to rob, we accordingly reverse the convictions on those counts for the aforementioned reason that the evidence was not legally sufficient to sustain them.[2]

---

at least) to Count 5 (simple assault), the crime thus referred to would fail to qualify as a "crime of violence" under the statute.

Even an alternative spur off from the vertical ladder of ascending and descending gravity could be included in the permitted compass of such flexibility of reference on the part of the handgun count. If a multi-count indictment, for instance, charged that a single assault had been aggravated upward by two different modes of aggravation (see footnote 2 *infra*)—assault with intent to murder and assault with intent to rob—either could be the legitimate referent for a lesser count charging the use of a handgun in a crime of violence. Just, however, as two different modes of aggravating upward a single assault do not create two assaults, neither do two different ways of qualifying a single undergirding crime as a "crime of violence" create two "crimes of violence."

This flexibility of reference, however, was not available to the State in the present case. Referring affirmatively to the crime of assault with intent to rob, as it did, the handgun count cannot then reach out for sustaining reference to an assault with intent to murder, which was never charged. The flexibility of reference on the part of the handgun count is limited by the four corners of its indictment.

2. In colloquy at oral argument, both court and counsel exchanged several simplistic, off-the-cuff observations about the possible future of this litigation, which, upon more leisured reflection, turn out to have been incorrect. It might, at first glance, be supposed that because the charge of assault with intent to murder had inadvertently never been drawn, no jeopardy ever attached with respect to it and a possible prosecution with respect to it would not, thereby, be foreclosed. Such, of course, would not be the case here.

The same common law assault that was a lesser included offense under each of the "assault with intent to rob" indictments is also the lesser included assault that lurks within a possible "assault with intent to murder" charge arising out of the same incident. Although there are various modes of aggravation for a single assault—*e.g.* the specific intent to rob and the specific intent to murder—there is nonetheless one single predicate assault that underlies them all. The various branches of possible aggravation stem outward from a common trunk. Any contemplated "assault with intent to murder" charge and its lesser, included simple assault would be "the same offense" according to *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Newton v. State,* 280 Md. 260, 383 A.2d 262 (1977). Since there has already been a conviction and sentence for the

## *Jury Instruction on Handgun Violation*

■  The appellant phrases this contention as one charging that "the trial judge erred in instructing the jury that there was sufficient evidence, if believed, to find appellant guilty of possession of a handgun." We find the contention without merit. Indeed, if the evidence had not been suffi-

---

underlying assault in this case, a plea of *autrefois convict* or former conviction would, therefore, bar a trial for assault with intent to murder.

Indeed, an assault with intent to rob and an assault with intent to murder arising out of the same attack are not separate crimes at all, but rather separate modes of aggravating a common crime. A defendant who has assaulted his victim with the concomitant specific intents to rape her, to rob her, and to kill her, has committed not three crimes but one. That one has simply been aggravated upward to the felony plateau in three different ways. An uncritical application of the *Blockburger* test, simply comparing elements, might make it appear that assault with intent to rob, assault with intent to murder, and assault with intent to rape are all separate crimes because each possesses a distinct element. It is not a proper occasion to apply the *Blockburger* test, however, because these are but various forms of aggravating a common undergirding offense. By the same token, an uncritical application of the *Blockburger* test would indicate that premeditated murder and felony-murder are separate crimes, but we know that they are but alternative modes of aggravating a single crime.

A murder aggravated up to the first-degree level two separate ways does not become two murders. Neither does an assault aggravated up to the felonious level in two separate ways become two assaults.

It might facilitate our ability to conceptualize the relationship if we thought of common law assault as "assault in the second degree" and of the various aggravated assaults as forms of "assault in the first degree." It must be remembered, of course, that the aggravated assaults, in terms of possible punishment, have different maximum sentences, whereas the aggravated (or first-degree) murders have but one. It must also be remembered that the Legislature has provided a simplified indictment form for the aggravated murders, whereunder the charging of one form of aggravation (premeditation) will suffice even where what is proved is a totally different form of aggravation (such as the perpetration of certain felonies, the use of poison, or lying in wait). Md.Ann.Code, Art. 27, § 616 (1982 Repl.Vol.); *Wood v. State,* 191 Md. 658, 62 A.2d 576 (1948). Such simplified pleading has not been made available for the charging of the various aggravated assaults. They must continue to pass muster by traditional pleading standards. The analogy, nonetheless, between assault (and its aggravation) and murder (and its aggravation) may facilitate our understanding of both.

■

cient to support such a finding, the charge could never properly have been submitted to the jury.

Although it is clear that the court reporter somehow "botched" or dropped a line, the instruction given in this regard did not fail to pass muster:

"Under count 3 of the indictments, the defendant is charged with wearing, carrying, or transporting a handgun. It is a crime under our law for a person to wear, carry or transport a handgun whether openly or concealed.

The description of the gun [that] was given, if believed, is sufficient to satisfy the statute that it was, in fact, a handgun. It is not necessary that the handgun be produced in court. It is sufficient, if you believe from the facts that the weapon used was, in fact, a pistol or gun that was held in the hand and could be fired.

So if you believe beyond a reasonable doubt that the defendant did wear, carry or transport a handgun, then your verdict would be guilty."

The exception made by appellant's counsel also focuses on the trial court's conclusion, and instruction to the jury, that the evidence with respect to the handgun was legally sufficient:

"I think the definition of the handgun, I don't believe there was an adequate description placed in the record by either one of the State's—the victims in the case. I think Mr. Wilson stated he described the handgun from the time he saw it after this incident when he was released from the hospital, I believe the description that he gave at the time of the incident itself was not adequate. I accept to that."

■ Although the appellant's argument on this appeal at times wanders into the adequacy of the court's definition of a handgun and at times wanders into a contention that the court erroneously took the issue away from the jury, the central thrust of the contention gets back to the adequacy of the evidence. We shall confine ourselves to that conten-

tion precisely and not to vaguely related contentions resting in its shadow, that might have been raised but were not. Both Desire Moore and Darryl Wilson testified that a handgun was used. Darryl Wilson, although the weight of his testimony in this regard was diminished on cross-examination, testified that the gun was a .38. The descriptions of the gun were variously that it was "big," "black," and "metal." The appellant's reliance on *Beard v. State,* 47 Md.App. 410, 423 A.2d 275 (1980), is utterly misplaced. In that case, a witness's description of the weapon as a "big, rusty gun," was insufficient, but the issue was whether it was a handgun or one that was normally fired from the shoulder. In this case, Desire Moore testified that the appellant's hand covered most of the gun during the shooting. That is enough to permit a reasonable inference that it was a handgun and not a full-fledged rifle or shotgun.

■ Any possible inadequacy of the mere verbal description given by the witnesses to prove that the gun was operational was more than compensated for by the six shots that were heard and by the three bullets that ended up in Darryl Wilson's body. We see no reversible error in the instructions.

*Sufficiency of the Evidence to Prove the Use of a Handgun in the Commission of an Assault with Intent to Murder*

The appellant's contention that the evidence was not legally sufficient to sustain one or both of the convictions for the use of a handgun in the commission of the two violent crimes of assault with intent to murder is moot because of our holding that such crimes were never charged.

CONVICTIONS ON BOTH SECOND COUNTS CHARGING SIMPLE ASSAULT AFFIRMED; BOTH SENTENCES FOR SIMPLE ASSAULT VACATED AND REMANDED FOR RESENTENCING IN CONFORMITY WITH THIS OPINION; JUDGMENT FOR POSSESSION

OF A HANDGUN UNDER THIRD COUNT OF INDICT-
MENT #18333501 AFFIRMED; JUDGMENT FOR POS-
SESSION OF A HANDGUN UNDER THIRD COUNT OF
INDICTMENT #18333502 REVERSED; BOTH JUDG-
MENTS UNDER THE FOURTH COUNTS CHARGING
THE USE OF A HANDGUN IN THE COMMISSION OF A
CRIME OF VIOLENCE REVERSED; COSTS TO BE PAID
BY MAYOR AND CITY COUNCIL OF BALTIMORE.