519 A.2d 1269

**Terry Lang DILLSWORTH**

v.

**STATE of Maryland.**

**No. 36 Sept. Term, 1986.**

Court of Appeals of Maryland.

Jan. 27, 1987.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

MARVIN H. SMITH, Judge, (retired), Specially Assigned.

Petitioner Terry Lang Dillsworth, after conviction by an Allegany County jury, was sentenced to consecutive terms for assault with intent to maim, disfigure or disable, and third degree sexual offense. At trial the victim testified that when Dillsworth attacked her he said he was going to rip out her vagina. She said further, "He put his hand inside me and started to pull and tear at me." Next, Dillsworth threatened to rip out the victim's throat. He placed two or three fingers down her throat and choked her. The Court of Special Appeals affirmed the convictions in *Dillsworth v. State*, 66 Md.App. 263, 503 A.2d 734 (1986).

We granted Dillsworth's petition for a writ of certiorari to consider his contentions that the convictions for assault with intent to maim and third degree sexual offense should have been merged and that the sentence was based, in part, upon impermissible considerations. We shall affirm.

## I. Merger

Dillsworth contends that merger of the offenses of assault with intent to maim, disfigure or disable and third degree sexual offense is mandated by both the required evidence test and the rule of lenity.

### A. The Required Evidence Test

We have consistently applied the required evidence test in determining whether two offenses are the same for double jeopardy purposes. *See Brooks v. State*, 284 Md. 416, 420–21, 397 A.2d 596, 598 (1979); *Thomas v. State*, 277 Md. 257, 266, 353 A.2d 240, 246 (1976). Judge Eldridge recently summarized the test for the Court in *State v. Jenkins*, 307 Md. 501, 515 A.2d 465 (1986):

> "The normal test for determining whether one offense merges into another is the so-called 'same evidence test' or 'required evidence test' or, as it is often labeled, the '*Blockburger* test.' [1] This test focuses upon the ele-

---

1. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). The required evidence test in fact antedates

ments of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." 307 Md. at 517, 515 A.2d at 473.

"Required" evidence is not to be confused with "actual" evidence. Under an actual evidence approach, offenses would merge whenever the evidence actually adduced at trial is substantially the same for both offenses. We have explicitly rejected the actual evidence test as our general standard for determining merger. *Brooks,* 284 Md. at 420–21, 397 A.2d at 598. We there said that "the cases in this Court have consistently taken the position that the general test for determining merger of offenses, as well as for deciding whether two offenses should be deemed the same for double jeopardy purposes, is the required evidence test." In *Brooks* we said that the required evidence test

"focuses upon the *elements* of the two crimes rather than upon the actual evidence adduced at trial. The 'required evidence' refers to that evidence needed, as a matter of law, to prove the crimes. This was explained in *Thomas v. State,* 277 Md. 257, 267, 353 A.2d 240 (1976):

'The required evidence is that which is minimally necessary to secure a conviction for each statutory offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode.' "

284 Md. at 420, 397 A.2d at 598 (emphasis in original; citations omitted).

*Jenkins* involved convictions for assault with intent to murder and assault with intent to maim, disfigure or disable. The two offenses were based on a single act: the

---

*Blockburger.* For a discussion of the history of the test, see *Thomas v. State,* 277 Md. 257, 353 A.2d 240 (1976).

shooting of another man during an altercation. We held that assault with intent to maim merges into assault with intent to murder when the offenses are based on the same, single act of assault. 307 Md. at 521–22, 515 A.2d at 475. The basis for the merger, however, was not the required evidence test. We said that under that test the offenses would not merge as each requires proof of a distinct element. Specifically, one offense requires proof of an actual, specific intent to murder. The perpetrator of an assault with intent to maim, disfigure or disable, on the other hand, contemplates that the victim shall live. Consequently, the two intents are "different in kind" and do not merge under the required evidence test. *Id.* at 515, 517–18, 515 A.2d at 472, 473.

We have applied the required evidence test in other cases, concluding that statutory daytime housebreaking with intent to steal does not merge with statutory breaking and entering a dwelling house, *Hawkins v. State*, 291 Md. 688, 436 A.2d 900 (1981); that solicitation to commit murder merges into the offense of being an accessory before the fact to the murder, *Lewis v. State*, 285 Md. 705, 404 A.2d 1073 (1979); that the underlying felony merges into a conviction for felony murder, *Newton v. State*, 280 Md. 260, 373 A.2d 262 (1977); that assault and the statutory offense of carrying a weapon openly with intent to injure do not merge, *Cousins v. State*, 277 Md. 383, 354 A.2d 825, *cert. denied*, 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976); and that assault merges into rape, *Green v. State*, 243 Md. 75, 220 A.2d 131 (1966).

We turn to the question of whether the two offenses involved here each requires proof of an element which the other does not.[2] Assault with intent to maim, disfigure or disable is proscribed by Maryland Code (1957, 1982 Repl. Vol.) Art. 27, § 386:

---

**2.** *Green v. State*, 243 Md. 75, 220 A.2d 131 (1966), which held that assault merges into rape, does not of itself mandate merger. In this case the assault possesses an additional required element: the intent to maim, disfigure or disable.

"If any person ... shall assault or beat any person, with intent to maim, disfigure or disable such person ... every such offender ... shall be guilty of a felony...."

The provisions relative to third degree sexual offense are found in Code (1957, 1982 Repl.Vol.) Art. 27, § 464B, which states in relevant part:

"(a) *What constitutes.* - A person is guilty of a sexual offense in the third degree if the person engages in sexual contact:

"(1) With another person against the will and without the consent of the other person, and:

"(i) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

"(ii) *Inflicts* suffocation, strangulation, disfigurement or serious physical injury upon the other person or upon anyone else in the course of committing that offense; or

"(iii) *Threatens* or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping...." (Emphasis added.)

"Sexual contact" is defined in Code (1957, 1982 Repl.Vol.) Art. 27, § 461(f), as

"the intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification or for abuse of either party and includes the penetration, however slight, by any part of a person's body, other than the penis, mouth, or tongue, into the genital or anal opening of another person's body if that penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party."

Both offenses carry maximum penalties of ten years.

In *Jenkins* we said, "Assault with intent to maim, disfigure or disable ... requires one of these three enumerated

statutory intents...." 307 Md. at 515, 515 A.2d at 472. Third degree sexual offense requires proof of forcible, unconsented-to sexual contact and, for purposes of this case, one of the enumerated aggravating circumstances, among which are included threatening or inflicting "disfigurement."

■ Assuming that under *Green,* 243 Md. 75, 220 A.2d 131, simple assault merges into a third degree sexual offense, the inquiry narrows to whether that relationship is affected by adding to simple assault the element of intent to maim, disfigure or disable. Clearly, third degree sexual offense requires elements which assault and assault with intent to maim, disfigure or disable do not. For example, the sexual offense requires proof that a specific part of the body was touched or penetrated, and that the purpose was sexual arousal, sexual gratification, or abuse. Consequently, unless it can be said that an actual, specific intent to maim, disfigure or disable constitutes an element of third degree sexual offense, there can be no question but that each offense requires proof of an element which the other does not. As earlier noted, either the infliction or the threatening of disfigurement would satisfy the aggravating circumstance requirement of third degree sexual offense. Code (1957, 1982 Repl.Vol.) Art. 27, § 464B(a)(1)(ii), (iii). However, neither inflicting nor threatening disfigurement necessarily involves an actual, specific intent to disfigure. For example, it is quite possible to inflict disfigurement without having a specific intent to do so. Similarly, one could threaten disfigurement without having any actual intent of carrying out the threat. Although an actual intent to disfigure could accompany the infliction or threat, § 464B does not require such an intent. The language we quoted earlier from *Thomas,* 277 Md. at 267, 353 A.2d at 246–47, offers guidance: "The required evidence is that which is *minimally necessary* to secure a conviction for each statutory offense." (Emphasis added.) We conclude that there is no merger of these two crimes under the required evidence test.

## B. The "Rule of Lenity" [3]

Although the required evidence test is the normal standard for determining whether offenses merge, we, as observed in *Jenkins,* have "recognized on several occasions ... [that it] is not the exclusive standard." 307 Md. at 518, 515 A.2d at 473. In *Jenkins* we quoted from *Brooks,* 284 Md. 416, 397 A.2d 596:

> "[E]ven though offenses may be separate and distinct under the required evidence test, courts occasionally find as a matter of statutory interpretation that the Legislature did not intend, under the circumstances involved, that a person could be convicted of two particular offenses growing out of the same act or transaction. *See, e.g., Simpson v. United States,* 435 U.S. 6, 13–16, 98 S.Ct. 909 [913–915], 55 L.Ed.2d 70 (1978); *United States v. Gaddis,* 424 U.S. 544, 547–548, 96 S.Ct. 1023 [1025–1026], 47 L.Ed.2d 222 (1976); *Ladner v. United States,* 358 U.S. 169, 173–178, 79 S.Ct. 209 [211–214], 3 L.Ed.2d 199 (1958); *Prince v. United States,* 352 U.S. 322, 327, 77 S.Ct. 403 [406], 1 L.Ed.2d 370 (1957); *Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620 [622–623], 99 L.Ed. 905 (1955); *Thessen v. State,* 508 P.2d 1192, 1195–1197 (Alas.1973); *Manning v. United States,* 270 A.2d 504, 506 (D.C.1970); *State v. McCarroll,* 337 So.2d 475, 478–479 (La.1976)." 284 Md. at 423–24, 397 A.2d at 600.

We concluded in *Jenkins* "that assault with intent to murder and assault with intent to maim, disfigure or disable, when based on the same single act of assault, should not be viewed as entirely separate crimes for purposes of conviction and sentence." 307 Md. at 521, 515 A.2d at 475. In so holding we observed that courts in other jurisdictions have reached the same conclusion with regard to single acts of assault which meet statutory requirements for more than one aggravated assault. We quoted from *Manigault v.*

---

3. The cases suggest that "rule of lenity" and "merger by legislative intent" are interchangeable terms.

*State*, 61 Md.App. 271, 486 A.2d 240 (1985), where Judge Moylan said for the court:

"Indeed, an assault with intent to rob and an assault with intent to murder arising out of the same attack are not separate crimes at all, but rather separate modes of aggravating a common crime. A defendant who has assaulted his victim with the concomitant specific intents to rape her, to rob her, and to kill her, has committed not three crimes but one. That one has simply been aggravated upward to the felony plateau in three different ways. An uncritical application of the *Blockburger* test, simply comparing elements, might make it appear that assault with intent to rob, assault with intent to murder, and assault with intent to rape are all separate crimes because each possesses a distinct element. It is not a proper occasion to apply the *Blockburger* test, however, because these are but various forms of aggravating a common undergirding offense. By the same token, an uncritical application of the *Blockburger* test would indicate that premeditated murder and felony-murder are separate crimes, but we know that they are but alternative modes of aggravating a single crime.

"A murder aggravated up to the first-degree level two separate ways does not become two murders. Neither does an assault aggravated up to the felonious level in two separate ways become two assaults.

"It might facilitate our ability to conceptualize the relationship if we thought of common law assault as 'assault in the second degree' and of the various aggravated assaults as forms of 'assault in the first degree.'" 61 Md.App. at 285 n. 2, 486 A.2d at 247 n. 2.

Clearly, the instant case is distinguishable to the extent that it involves more than "an assault aggravated up to the felonious level in two separate ways."

We have alluded to the doctrine of merger by legislative intent in several other decisions. *See State v. Boozer*, 304 Md. 98, 497 A.2d 1129 (1985) (legislative intent compatible with notion that single criminal episode can give rise to

multiple sexual offense charges); *State v. Oliver*, 302 Md. 592, 611 n. 12, 490 A.2d 242, 251 n. 12 (1985); *Whack v. State*, 288 Md. 137, 416 A.2d 265 (1980), *appeal dismissed and cert. denied*, 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981); *Brooks*, 284 Md. at 423–24, 397 A.2d at 600; *Newton*, 280 Md. at 274 n. 4, 373 A.2d at 269 n. 4 (Legislature may indicate intent to impose punishment under two statutes, even though the offenses are the "same" under the required evidence test). Aside from *Jenkins*, however, *Whack* is the only other case in which the doctrine was squarely before the Court. Tommy Whack received consecutive sentences for robbery with a deadly weapon (Code (1957, 1976 Repl.Vol.), Art. 27, § 488) and use of a handgun in the commission of a felony (Art. 27, § 36B(d)). Both offenses occurred during the course of a single robbery. In upholding the sentences we first observed that there was no legislative history indicating the General Assembly did not intend multiple punishment for violation of both statutes. We stated that a mere absence of legislative history, however, would not preclude merger: "any doubt concerning the legislative intent should be resolved against turning one transaction into multiple offenses...." 288 Md. at 144–45, 416 A.2d at 268–69, citing *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). We held that, lack of legislative history notwithstanding, the General Assembly clearly intended to permit multiple punishment for robbery with a handgun. First,

> "[I]n enacting the handgun act, [Section 36B(d)] the Legislature was concerned with the matter of duplicative legislation. Where it desired no duplication it specifically amended or superseded those other statutes. Against this background, it is significant that the General Assembly did not amend Art. 27, § 488, to delete handguns from the coverage of that robbery statute." 288 Md. at 146, 416 A.2d at 270.

Moreover, the very language of § 36B(d) mandated multiple punishment. Among other things, the section made use of a handgun in the commission of a felony a "separate misde-

meanor" and provided for a sentence "in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor." 288 Md. at 147. 416 A.2d at 270.

■ The doctrine of merger by legislative intent operates as a rule of statutory construction and is not constitutionally mandated. Nevertheless, we and the Court of Special Appeals have examined applications of the doctrine by the Supreme Court. As a matter of statutory interpretation, the Supreme Court has held that the following offenses merge: robbery by the use of a dangerous weapon or device (18 U.S.C. § 2113(d)) and use of a firearm to commit a federal felony (former 18 U.S.C. § 924 (c)), *Simpson*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (distinguished in *Whack*, 288 Md. 137, 416 A.2d 265); bank robbery (18 U.S.C. § 2113(a), (b), (d)) and receiving or possessing the proceeds of that robbery (former 18 U.S.C. § 2113(c)), *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976); multiple convictions of assaulting a federal officer with a deadly weapon, where a single gunshot causes injury to more than one officer (former 18 U.S.C. § 254 (1940)), *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); robbery of a federally insured bank and entering the bank with intent to commit a felony (18 U.S.C. § 2113), *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); and multiple convictions for violation of the Mann Act (18 U.S.C. § 2421) where two women were transported at the same time, *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

In holding the policy of lenity to be inapplicable, the Court in *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), distinguished *Bell*. *Gore* involved violations of three federal narcotics laws in a single sale of narcotics on each of two different days for a total of six counts. Justice Frankfurter said for the Court:

"It is one thing for a single transaction to include several units relating to proscribed conduct under a single provision of a statute. It is a wholly different thing to evolve

a rule of lenity for three violations of three separate offenses created by Congress at three different times, all to the end of dealing more and more strictly with, and seeking to throttle more and more by different legal devices, the traffic in narcotics. Both in the unfolding of the substantive provisions of law and in the scale of punishments, Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws." 357 U.S. at 391, 78 S.Ct. at 1284, 2 L.Ed.2d at 1409.

In *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), consecutive sentences were imposed for both conspiracy to import marijuana and conspiracy to distribute marijuana. The violations stemmed from a single conspiracy having a dual objective. Despite an absence of legislative history on the question of multiple punishment, the Court held the rule of lenity inapplicable:

> "*Lenity ... serves only as an aid for resolving an ambiguity; it is not to be used to beget one.* The rule comes into operation 'at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.' *Callanan v. United States*, [364 U.S. 587], 596 [, 81 S.Ct. 321, 326, 5 L.Ed.2d 312, 319 (1961)].

> "In light of these principles, the rule of lenity simply has no application in this case; we are not confronted with any statutory ambiguity. To the contrary, we are presented with statutory provisions which are unambiguous on their face and a legislative history which gives us no reason to pause over the manner in which these provisions should be interpreted.

> "The conclusion we reach today regarding the intent of Congress is reinforced by the fact that the two conspiracy statutes are directed to separate evils presented by drug trafficking. 'Importation' and 'distribution' of marihuana impose diverse societal harms, and, as the Court of Appeals observed, Congress has in effect determined that a conspiracy to import drugs and to distribute them is twice

as serious as a conspiracy to do either object singly. 612 F.2d [906], at 918 [5th Cir.1980]." 450 U.S. at 342–43, 101 S.Ct. at 1144, 67 L.Ed.2d at 284 (emphasis added).

The concept that lenity is an aid for resolving ambiguity and not a device for creating it was echoed in *Johnson v. State,* 56 Md.App. 205, 216, 467 A.2d 544, 549 (1983), *cert. denied,* 299 Md. 136, 472 A.2d 999 (1984). In that case the Court of Special Appeals declined to require merger of assault with intent to murder and attempted robbery with a dangerous or a deadly weapon. Judge Adkins reviewed for the court a number of the pertinent cases in the Supreme Court, this Court, and the Court of Special Appeals:

"A common thread connects all the cases we have just discussed. It is the assumption (often not articulated) that under the circumstances of a given case, it is reasonable to believe that the legislature that enacted a particular statute or statutes would express some intent as to multiple punishment. That assumption is appropriate when a single act is charged as multiple offenses under a single statute (*Ladner, Bell* and *Prince*), where the subject of two statutes is of necessity closely intertwined (*Loscomb* [*v. State,* 45 Md.App. 598, 416 A.2d 1276 (1980)] and *Fields* [*v. State,* 50 Md.App. 717, 439 A.2d 1121 (1982)], where one offense is necessarily the overt act of a statutory offense (*Walker* [*v. State,* 53 Md.App. 171, 452 A.2d 1234 (1982)], and where one statute, by its very nature, affects other offenses because it is designed to effect multiple punishment (*Whack*). Under those circumstances, it is not unreasonable to assume that the legislative body contemplated the possibility of multiple punishment and to conclude that unless the intention in favor of multiple punishment is clear, as in *Whack,* the Rule of Lenity or its equivalent should be applied against the imposition of multiple punishment." 56 Md.App. at 215, 467 A.2d at 548–49.

■ If the analytical framework enunciated in *Johnson* is applied to the case at bar, it quickly becomes apparent that this is not a proper case for invoking the doctrine of merger

by legislative intent. The prohibition against an assault with intent to maim, disfigure or disable was enacted by ch. 99 of the Acts of 1853. Code (1957, 1982 Repl.Vol.) Art. 27, § 386. Article 27, §§ 461 *et seq.*, the sexual offense legislation, was enacted in 1976, 123 years later. Ch. 573 Acts of 1976. As Judge McAuliffe noted for the Court in *Boozer*, 304 Md. at 102, 497 A.2d at 1131, this legislation was a comprehensive package "to reform and codify this State's rape and sexual offense laws." In discussing the prohibition against fourth degree sexual offense set forth in Art. 27, § 464C, Judge McAuliffe observed for the Court:

"[I]t is clear that many of the various acts of criminal conduct grouped together in § 464C historically and customarily have been considered sufficiently separate and distinct from each other to justify separate punishment, even though occurring in close temporal proximity and within the same criminal episode. Prior to the 1976 revision of our rape and sexual offense laws, a defendant in this State could have been separately charged and punished with offenses now grouped within § 464C." 304 Md. at 104, 497 A.2d at 1132.

There is no indication that the General Assembly considered the question of multiple punishment in those instances where a consumated sexual offense embodies an assault with intent to maim, disfigure or disable. Furthermore, assault with intent to maim, disfigure or disable and third degree sexual offense do not fall within any of the categories set forth in *Johnson*. In other words, the two offenses (1) do not constitute conduct proscribed by a *"single* statute"; (2) are not "of necessity closely intertwined," and (3) do not relate to each other in such a manner that one offense is *"necessarily* the overt act" of the other. Nor is this a situation in which one of the statutes "by its very nature [ ] affects other offenses." Because none of those relationships exists, there is no reason "to assume that the legislative body contemplated the possibility of multiple punishment" and the doctrine of merger by legislative intent is not triggered.

## II.

Dillsworth next contends that the trial judge in imposing sentence improperly considered the large number of criminal charges lodged against him on prior occasions. For various reasons many of those charges never resulted in convictions. Dillsworth points out that a sentencing court's consideration of mere "bald accusations of criminal conduct" contravenes Maryland decisional law. *See Henry v. State,* 273 Md. 131, 328 A.2d 293 (1974); *Purnell v. State,* 241 Md. 582, 217 A.2d 298 (1966); *Walker v. State,* 186 Md. 440, 47 A.2d 47 (1946).[4] Although Dillsworth correctly states the law, the record simply does not support his factual assertion.

Specifically, Dillsworth takes issue with the following comment by the trial judge:

"And whether or not society has responded to all of Mr. Dillsworth's problems, I don't know, nor is it my job to at this stage worry too much about that. My job right now is to make sure society is protected and society responds appropriately to this kind of conduct. I will observe in fairness ... and this does enter into my sentencing ... that, as pointed out by [Dillsworth's attorney,] Mr. Smith, while Mr. Dillsworth has a criminal experience that numbers a couple of pages, if you consider all of those factors individually, one is struck by the fact that up till now Mr. Dillsworth has had a number of charges placed against him that have in one fashion or another been nol-prossed or dismissed, or otherwise resulted in at least a favorable outcome to Mr. Dillsworth, so that he has actually only been convicted of a few matters up till now. And I recognize that. That for whatever reason in the past he

---

**4.** At the same time, it is proper for a sentencing judge to consider reliable evidence of the details and circumstances surrounding a criminal charge of which a defendant has been acquitted. *See, e.g., Logan v. State,* 289 Md. 460, 481, 425 A.2d 632, 643 (1981); *Henry v. State,* 273 Md. 131, 148, 328 A.2d 293, 303 (1974); *see also Smith v. State,* 308 Md. 162, 517 A.2d 1081 (1986). This principle has not been raised, however, in the case at bar.

has not had the type of criminal conviction record that one would expect when you look at the two to three pages of his involvement."

■ The trial judge's remarks concerning the prior charges appear to have been entirely fair and proper. He expressly took into account the fact that Dillsworth had relatively few convictions despite the length of his criminal record. By negative inference, then, the trial judge did not permit the so-called "bald accusations" to enter into his determination of sentence. This conclusion is bolstered by an exchange which occurred earlier during the sentencing hearing:

"MR. SMITH: Yes, sir, Your Honor. On previous convictions, Mr. Moessinger states that he has a long and varied criminal record. However, when you go over the record, Your Honor, you'll find that as a minor he apparently abused alcohol and at one point was sent to the Springfield State Hospital for alcohol treatment. Then as far as other convictions are concerned you have the forgery for which he got two years probation, the bad check, and the malicious destruction of property. Everything else was he was either found not guilty or was nol-prossed. So his record while he has a long arrest record, he does not have a long conviction record. The bad checks, the forgery, and the one thirty day for malicious destruction of property when he had an argument with his brother over a house roof.

"BY THE COURT: Well I'll ... will draw my own conclusions as to the nature of the gentleman's criminal record based on the pages that are set forth here, and I can note the distinction between convictions and being charged, so all that will be considered and has been considered by me."

It seems clear from the record that the trial judge did not base Dillsworth's sentences on the criminal charges which did not result in convictions. Accordingly, his contentions to the contrary are without merit.

**370**

■■■■■■■■

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.